[No. B014640. Second Dist., Div. Two. Aug. 19, 1987.]

DOROTHY YATES et al., Plaintiffs and Appellants, v.
LAWRENCE POLLOCK, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the portion of the opinion certified for publication follows.

COUNSEL

Samuel Shore, David M. Luboff and James R. McGrath, Jr., for Plaintiffs and Appellants.

Bonne, Jones, Bridges, Mueller & O'Keefe, Joseph D. McNeil, Thelen, Marrin, Johnson & Bridges, Curtis A. Cole and Susan A. Beytin for Defendant and Appellant.

Horvitz, Levy & Amerian, S. Thomas Todd, Frederic D. Cohen and Fred J. Hiestand as Amici Curiae on behalf of Defendant and Appellant.

OPINION

GATES, J.—Defendant Lawrence Pollock, a surgeon, appeals from the judgment entered pursuant to a jury verdict that awarded damages to plaintiffs Dorothy Yates, Richard Yates, Darlene Dominguez, Charles Yates, Jr., Debbie Everett and Lydia Yates, the spouse and adult children of decedent Charles Yates, in this wrongful death action based upon medical malpractice. He contends: "I. The judgment for noneconomic damages is contrary to both fact and law."

. . . . . . . . . . . . . . . . . . . . *

---

* See footnote *ante,* page 195.

Plaintiffs cross-appeal from the order denying defendant's motion for new trial which was conditioned upon their acceptance of a reduction in the judgment from $1,903,560 to $1,603,560.[1]

On August 24, 1982, defendant performed surgery on decedent to remove his gallbladder. Following the operation decedent developed a number of serious postoperative complications. Because defendant made no attempt to determine the cause of these problems, decedent sought treatment from another physician, Doctor Herman Smith.

Doctor Smith suspected decedent might have an abscess and that his common bile duct was obstructed. When decedent's condition had improved sufficiently to permit further surgery, Smith's suspicions were confirmed. He found an abscess below the liver where decedent's gallbladder had been removed and discovered defendant had ligated decedent's common bile duct rather than his cystic duct during the August 24 surgery. Unfortunately, the corrective measures taken by Smith failed to stem the bacterial infection in decedent's abdominal cavity necessitating additional surgery a week later in a final attempt to save his life. This procedure, too, was unsuccessful and on October 31, 1982, Charles Yates died.

All doctors testifying at the time of trial, including defendant, concurred that ligation of the common bile duct violates the standard of care required of a reasonably prudent surgeon. Doctor Smith further agreed it was probable decedent would have "been alive today" were it not for "the events that took place in the course of the surgery on August the 24th at Pico Rivera Community Hospital which resulted in the obstruction of the common bile duct and the development of abscesses and infections and the consequences of that act . . . ."

■ Defendant's first contention is persuasive insofar as he challenges the trial court's refusal to reduce noneconomic damages to $250,000 as required by the Medical Injury Compensation Reform Act of 1975 (MICRA). (Stats. 1975, 2d Ex. Sess., chs. 1 and 2.) Civil Code section 3333.2 provides in pertinent part: "(a) In *any action* for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage. [¶] (b) In *no action* shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250 000). [¶] (c) For the

---

[1] In accordance with an agreement entered into by plaintiffs and approved by the trial court, damages were apportioned so that decedent's widow received the entire economic loss award of $103,560 and the noneconomic loss award totaling $1.5 million was divided equally among the six plaintiffs.

purposes of this section: . . . [¶](2) 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or *wrongful death* . . . ." (Italics added; hereinaffter section 3333.2.)

We have no difficulty ascertaining the legislative intent of this statute since it is unambiguous on its face. Its plain language unequivocally manifests a desire to place a $250,000 cap on awards for noneconomic damages in all medical malpractice litigation, whether recovery is sought by patients who have themselves suffered personal injuries or by the survivors of such victims who initiate suits for wrongful death.

Should any lingering doubt exist on this point, it is quickly dispelled by an examination of the legislative history of section 3333.2. Certain of the tentative drafts of the proposed MICRA legislation actually did explicitly exclude plaintiffs in wrongful death actions from the specified ceiling on noneconomic damages and permitted them to recover "[a]ll noneconomic damages. . . ." (Assem. Bill No. 1 (1975-1976 2d Ex. Sess.) May 19, 1975, proposed Health & Saf. Code §§ 21153, 21154, pp. 11-12; Sen. Amend. to Assem. Bill No. 1 (1975-1976 2d Ex. Sess.) June 27, 1975, §§ 24.6, 24.7.) Ultimately, however, the Legislature rejected that approach in favor of a comprehensive provision which restricted the amount of noneconomic damages without regard to the status of the plaintiff.

Despite the clear wording of the statute plaintiffs maintain it has no applicability to wrongful death actions because subdivision (a) refers only to actions for "injury" rather than "injury or wrongful death." This argument fails, inter alia, because it ignores the fact that wrongful death claims are for "injuries" suffered by the heirs of medical malpractice victims. (See *Krouse v. Graham* (1977) 19 Cal.3d 59, 68 [137 Cal.Rptr. 863, 562 P.2d 1022].)

Plaintiffs also urge that inasmuch as survivors may not recover for "pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage" (§ 3333.2, subd. (a)), the Legislature must have intended to exclude wrongful death actions from the reach of the statute. We disagree. Subdivision (a) does not purport to set forth a comprehensive catalogue of the types of losses to which the statute is applicable; it simply identifies certain of the more common types of noneconomic damages which arise in malpractice actions.

Similarly the statute's reference to "nonpecuniary damage" is not fatal to its application in the wrongful death context. Although it is true that California decisional law indicates only "pecuniary" losses are compensable in wrongful death suits, nonetheless, as our highest court recognized in *Krouse*

v. *Graham, supra,* 19 Cal.3d at pages 67-68, damage awards in such cases, in fact, have never been restricted to those elements having an ascertainable economic value. That is to say, they have included what are, in effect, inherently nonpecuniary factors akin to pain and suffering, e.g., the loss of a decedent's society, comfort, protection, care, companionship, etc. (*Id.,* at p. 68. See also *Canavin* v. *Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 527 [196 Cal.Rptr. 82].) The continued affirmance of such awards, notwithstanding their "noneconomic" nature, undoubtedly reflects "a realization that if damages truly were limited to 'pecuniary' loss, recovery frequently would be barred by the heirs' inability to prove such loss. . . ." (*Krouse, supra,* 19 Cal.3d at p. 68.)

■ Plaintiffs' contention that section 3333.2 unconstitutionally abridges the right to a jury trial (Cal. Const., art. I, § 16) is but an indirect attack upon the Legislature's power to place a cap on damages. While it is clear section 3333.2 will in some cases result in the recovery of a lower judgment than would have been obtained before the enactment of the statute, it is well established that "the Legislature retains broad control over *the measure,* as well as *the timing,* of damages that a defendant is obligated to pay and a plaintiff is entitled to receive, and that [it] may expand or limit recoverable damages so long as its action is rationally related to a legitimate state interest. . . ." (*Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 158 [211 Cal.Rptr. 368, 695 P.2d 665], italics in original; *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 368-369 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233].)

While the general propriety of noneconomic damages is "firmly imbedded in our common law jurisprudence [citation]," no California case "has ever suggested that the right to recover for such noneconomic injuries is constitutionally immune from legislative limitation or revision. [Citations.]" (*Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d at pp. 159-160.) This being so, plaintiff's challenge must be rejected.

As a "fall back" position, plaintiffs assert that even if section 3333.2 is applicable to wrongful death actions, its $250,000 limitation should be applied to each plaintiff individually and not to all plaintiffs in the aggregate. However, it is evident from the terms of the statute that while each injured plaintiff is entitled to seek noneconomic damages, the maximum recovery permitted in any single medical malpractice *action* is $250,000, regardless of the number of plaintiffs involved. ■ Since the Legislature was obviously aware that "case precedent has consistently held 'only *one action* [can] be brought for the wrongful death of a person thereby preventing multiple actions by individual heirs and the personal representative' . . . ." and that "the cause of action for wrongful death has been consistently

characterized as 'a joint one, a single one and an indivisible one' . . ." (*Canavin* v. *Pacific Southwest Airlines, supra,* 148 Cal.App.3d at p. 529; italics in original; *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 694 [36 Cal.Rptr. 321, 388 P.2d 353]), we can but conclude its use of the word "action" in section 3333.2 represents its conscious decision to limit the total recovery for noneconomic loss in such suits to $250,000.

Our decision in this respect renders moot plaintiffs' cross-appeal, as well as defendant's claim that the judgment may not exceed plaintiffs' specification of damages in the amount of $1 million. ▮ Likewise, we need not pass on defendant's charge that the jury's assessment of noneconomic damages was excessive, since the actual award to be entered, $250,000, is eminently reasonable.[2] Decedent and his wife had been married for 35 years at the time of his death. They had an extremely close and loving relationship, brought about in part perhaps because both were deaf mutes.[3] Decedent also shared a special bond with his children, enhanced again to some degree by his disability. He was in frequent communication with four of his five children and they visited regularly. He was in every respect a very generous and supportive father, including financially. Merely by way of example, immediately prior to his initial surgery he and his wife were residing with one daughter and decedent was contributing $500 per month to aid her with her expenses.

. . . . . . . . . . . . . . . . . . .*

The judgment is modified to provide that plaintiffs are awarded damages in the aggregate amount of $353,560. As so modified, it is affirmed. Each party shall bear its own costs on appeal.

Compton, Acting P. J., and Fukuto, J., concurred.

A petition for a rehearing was denied September 8, 1987, and the petition of plaintiffs and appellants for review by the Supreme Court was denied November 12, 1987.

---

[2] Defendant also notes in passing that "[t]he record does not reveal any factual basis for the jury's finding of economic damages either." However, he offers no support for this proposition and our review of the record has disclosed none.

[3] Even defendant concedes in his opening brief that "an award of $200,000 to decedent's widow is arguably not excessive . . . ."

* See footnote, *ante,* page 195.