[No. B045427. Second Dist., Div. Two. Apr. 22, 1991.]

CHARLES YATES, JR., et al., Plaintiffs and Respondents, v. LAW OFFICES OF SAMUEL SHORE et al., Defendants and Appellants.

COUNSEL

Samuel Shore, in pro. per., and James R. McGrath for Defendants and Appellants.

Sullivan & Bottom and Philip G. Dorn for Plaintiffs and Respondents.

Horvitz & Levy, David S. Ettinger and S. Thomas Todd as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

FUKUTO, J.—This appeal presents two issues concerning the application of Business and Professions Code section 6146 (hereafter section 6146), the sliding-scale limitation on contingency fees for medical malpractice cases enacted by the Medical Injury Compensation Reform Act of 1975 (MICRA). The first issue is whether an attorney who represents several heirs in a wrongful death case grounded in medical malpractice may compute fees separately upon each plaintiff's share of the award, instead of applying section 6146's scale to the judgment as a whole. The second issue is whether, in a case subject to section 6146, the attorney may charge the clients hourly fees of another attorney he associates to handle the appeal. Applying the terms and manifest purposes of section 6146, we answer both questions in the negative, and affirm the trial court judgment awarding a refund to plaintiffs of the fees so charged.

FACTS

This case concerns legal fees charged in the wrongful death action of *Yates* v. *Pollock* (1987) 194 Cal.App.3d 195 [239 Cal.Rptr. 383] (hereafter *Yates I*). Plaintiffs, who were also the plaintiffs in that case, are the widow and five adult children of decedent Charles Yates. The defendants are Samuel Shore, a medical malpractice lawyer who represented plaintiffs in *Yates I,* and his professional corporations; we refer to all defendants as Shore.

In 1982, five of the plaintiffs signed an agreement retaining Shore to prosecute the wrongful death case against Charles Yates's surgeon. The remaining plaintiff, who apparently resided outside California, executed an identical agreement in 1984.[1] The retainer agreement provided for a 50

[1] Shore contends each plaintiff entered into a separate agreement with him, but the record reflects two typewritten retainer agreements, one signed by the initial five plaintiffs and the

percent contingent fee, well in excess of that permitted by section 6146; it also contained a two-paragraph waiver of "the provisions of said [statute] applicable to this retainer agreement," referring to Shore's opinion that the statute might be unconstitutional.[2] Under the agreement, plaintiffs were responsible for all costs, including "expert consultations," while Shore was authorized "to associate any other attorney or attorneys in his discretion, but at no expense to [plaintiffs], in furtherance of [their] rights and interests in this matter . . . ." Finally, as here relevant, the agreement provided, "Said fees do not include any services by [Shore] in connection with appeal of any judgment or order which may be granted or made in the premises, and [Shore] does not undertake to perform services in connection with any appeal."

Plaintiffs and Shore were successful in *Yates I*. The jury returned a verdict for $1,903,560, comprising $103,000 for pecuniary losses and the rest for noneconomic damages. Because Civil Code section 3333.2, a provision of MICRA, limits noneconomic damages in medical malpractice actions to $250,000, the trial court reduced the award to $1,603,560, allowing $250,000 noneconomic damages per plaintiff. However, on appeal this court further reduced the judgment, to $353,560. We held that, under Civil Code section 3333.2, only $250,000 in noneconomic damages may be awarded in a wrongful death case based on medical malpractice, regardless of the number of plaintiffs. (*Yates I, supra*, 194 Cal.App.3d at pp. 198-201.)

After remand, Shore collected the judgment, amounting to $452,887.25 including accrued interest. By this time section 6146's validity had been definitively established, and Shore computed his fees using the statutory scale.[3] However, he did not apply that scale to the entire net recovery after

second by the sixth. The issue is ultimately not material to our decision. For convenience, we shall refer simply to the agreement.

[2] The Supreme Court upheld the constitutionality of section 6146 in 1985. (*Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920 [211 Cal.Rptr. 77, 695 P.2d 164].)

[3] At this point the text of section 6146 becomes relevant. When plaintiffs retained Shore, the relevant provisions read as follows:

"(a) An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits: [¶] (1) Forty percent of the first fifty thousand dollars ($50,000) recovered. [¶] (2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered. [¶] (3) Twenty-five percent of the next one hundred thousand dollars ($100,000) recovered. [¶] (4) Ten percent of any amount on which the recovery exceeds two hundred thousand dollars ($200,000). [¶] The limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind. [¶] (b) If periodic payments are awarded to the plaintiff . . . , the court shall place a total value on these payments based upon the projected life expectancy of the plaintiff and include this amount in computing the total award from which attorney's fees are calculated under this section. [¶] (c) For purposes

costs. Instead, he divided the amount into six equal shares, and applied section 6146's percentages to each. This meant, for example, that instead of a 40 percent factor being applied to only the first $50,000 of the judgment, Shore claimed entitlement to 40 percent of each plaintiff's first $50,000 or fraction thereof. The resulting fee of $157,813.62 was nearly double what would have obtained had section 6146's percentages been applied to the judgment as a whole.

Shore's statement of reimbursable costs, totaling $39,445.16, also contained a controversial item. Shore deducted from the judgment $9,175 he had paid to James R. McGrath, an outside attorney he had engaged to handle the *Yates I* appeal at an hourly rate. According to Shore's subsequent declaration, plaintiffs had authorized McGrath's retention and deduction of his fees from recovery.

After receiving their net shares of the judgment, minus fees and costs as computed by Shore, plaintiffs commenced this action against him, to recover the appellate fee and the difference between the divided contingent fee and what it would have been had section 6146 been applied to the judgment as a whole. Plaintiffs contended the statute did not permit calculation of contingent fees per plaintiff, and that the appellate fee was not chargeable as a cost and also violated section 6146.

Plaintiffs moved for summary judgment, or alternatively for summary adjudication of issues. Shore's response included his declaration explaining calculation of the contingent fee and payment of the appellate fee, as described above. The trial court granted summary judgment, holding that section 6146 applied to the entire recovery in *Yates I* and that an attorney contracting for a contingent fee subject to section 6146 could not charge the client additional fees for the appeal. Judgment was entered in the aggregate sum of $87,523.45, including prejudgment interest.

---

of this section: [¶] (1) 'Recovered' means the net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and the attorney's office-overhead costs or charges are not deductible disbursements or costs for such purpose. [¶] (2) 'Health care provider' means . . . . [¶] (3) 'Professional negligence' is a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that the services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

In 1987, subdivisions (a)(3) and (a)(4) were amended to increase to $500,000 the amount of recovery subject to a 25 percent fee, and to increase to 15 percent the allowable fee on any further amount over $600,000.

DISCUSSION

*1. The Contingent Fee Calculation.*

■   The first issue presented concerns the proper method for measuring Shore's fee for the wrongful death case under section 6146: by applying the statute's percentage limitations to the judgment as a whole or to each plaintiff-heir's share. In defending his resort to the latter approach, Shore relies principally upon certain statutory language that he contends is clear and dispositive. He primarily points to section 6146, subdivision (a)'s initial reference to "a contingency fee for representing *any person* seeking damages in connection with an action . . ." (italics added), as well as its reference to "the person for whom the recovery is made" and section 6146, subdivision (b)'s reference to "the plaintiff." Shore contrasts the foregoing with the Legislature's repeated references to an "action" in MICRA's limit on non-economic damages, Civil Code section 3333.2, which we accordingly held in *Yates I* applied to the recovery as a whole. He further notes that in crafting MICRA the Legislature did not adopt a bill which would have limited "[t]he amount of attorney's fees contingent upon recovery of a judgment or settlement in any action . . . ." (Sen. Bill No. 1 (1975-1976 2d Ex. Sess.) § 2.) In response, plaintiffs note that "any person" is not the same as, and does not necessarily mean, "each person" or "per person." Plaintiffs further rely upon section 6146, subdivision (a)'s references, as defined by section 6146, subdivision (c)(1), to the "net sum recovered" as the factor to which the statutory percentages are to be applied.

The statutory language adduced by the parties does not resolve the issue, for that language is ambiguous. On the one hand, the specification of fees for representing "any person" does not necessarily authorize multiple fee calculations for multiple plaintiffs; the quoted phrase may well have been intended simply to generalize about the several types of potential plaintiffs later specified in section 6146, subdivision (a) (adults, infants, mentally disabled). Conversely, reference to "the net sum recovered" (§ 6146, subd. (c)(1)) could mean either the award in a given case or the recovery of a given plaintiff in the case. The face of section 6146 does not provide a clear answer to the issue of what fees are permitted for representing multiple heirs in a single wrongful death action.

We therefore must widen our inquiry to consider the statute as a whole, and its manifest purposes and their relation to kindred statutes, as well as the factual situation in question and its own legal underpinnings and bounds. As the Supreme Court has instructed, "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmo-

nized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

In pursuing this inquiry, all parties sensibly point to our related decision in *Yates I, supra,* 194 Cal.App.3d 195, which involved the interplay of another section of MICRA with the facts of plaintiffs' wrongful death case and the law governing and characterizing such actions. *Yates I* held that Civil Code section 3333.2 permitted only one award of $250,000 noneconomic damages for the several plaintiffs here. In the case of Civil Code section 3333.2, that construction appeared more straightforwardly from the statutory text, which stated that such damages could exceed the specified limit "[i]n no action." (Civ. Code, § 3333.2, subd. (b).) But in applying that language to the wrongful death action, we also noted the consistent law of this state that only one action may be brought for a decedent's wrongful death, regardless of the number of heirs, and that " 'the cause of action for wrongful death has been consistently characterized as "a joint one, a single one and an indivisible one" . . . .' " (*Yates I, supra,* 194 Cal.App.3d at pp. 200-201, quoting *Canavin* v. *Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 529 [196 Cal.Rptr. 82].)

Shore argues these factors have little relevance to the present case, because section 6146 does not squarely tie its limitations to "an action," and because the authorities that prescribe a single action for wrongful death also recognize several underlying rights residing in the heirs for whom the action must be brought. But there actually exist important similarities between section 6146 and Civil Code section 3333.2. Section 6146 limits and fixes contingent fees "in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence . . . ." (§ 6146, subd. (a).) "Professional negligence" is defined in subdivision (c)(3) of section 6146 identically as in subdivision (c)(2) of Civil Code section 3333.2, as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death . . . ." These specifications parallel the related legal reality that a wrongful death caused by an incident of medical malpractice necessarily gives rise to one action only.

Not only are the terms of section 6146 and Civil Code section 3333.2 more similar than Shore would have it, but similar construction also is favored by the imperative that the two sections of the same "interrelated legislative scheme enacted to deal specifically with all medical malpractice

claims" (*Young* v. *Haines* (1986) 41 Cal.3d 883, 894 [226 Cal.Rptr. 547, 718 P.2d 909]) be construed harmoniously, so that related legislative purposes be advanced. In evaluating section 6146, the Supreme Court has noted that "MICRA incorporated a number of provisions that place special limits on . . . a malpractice plaintiff's recovery," including Civil Code section 3333.2. (*Roa* v. *Lodi Medical Group, Inc.*, *supra*, 37 Cal.3d at p. 932.) From this the court deduced, "The Legislature may reasonably have concluded that a limitation on contingency fees in this field was an 'appropriate means of protecting the already diminished compensation' of such plaintiffs from further reduction by high contingency fees." (*Ibid.*) This is not to say that plaintiffs' loss of more than 75 percent of their *Yates I* jury award by dint of Civil Code section 3333.2 crudely compels that Shore's calculated fee also be cut. What it does mean is that the perceived legislative purpose of section 6146, independently and in relation to Civil Code section 3333.2, substantially favors construing the former to limit the overall contingent fee a lawyer may charge for a single action that is subject to the constraints of both statutes.

Practicality also properly informs our resolution of this issue; as previously noted, "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387.) Application of section 6146 according to Shore's approach would mean that the number of fee computations, and the number of shares subject to section 6146's higher percentage rates, would depend upon the number of heirs for whom the judgment was obtained. In some instances a greater number of heirs might elicit a markedly larger overall award. But given Civil Code section 3333.2's limitation on noneconomic damages, together with the traditional limit of a major part of the pecuniary damages to the decedent's earning capacity (see Flahavan et al., Cal. Practice Guide: Personal Injury (Rutter 1990) § 3:329, p. 3-196), the potential recovery will be relatively stable. Hence, under Shore's approach, the size of the attorney's fee would largely turn on how many close relatives the decedent left. This is not a rational intention to attribute to the Legislature.

We therefore find the most reasonable and harmonious construction and application of section 6146's ambiguous terms in this case to be that the percentage contingent fee limitations apply to the overall recovery in the action for wrongful death based on professional negligence. The trial court correctly so determined, and properly held Shore obligated to plaintiffs for the excess amount he charged based on his alternative calculation.[4]

---

[4] Our analysis and conclusion are necessarily confined to the situation before us, involving a wrongful death case with all heirs represented by the same attorney. We need not and do not consider plaintiffs' broader suggestion that section 6146 mandates a single contingent fee

## 2. The Appellate Fee.

■ The second issue presented concerns the legality and propriety of Shore's charging plaintiffs the additional fee for Attorney McGrath, whom Shore engaged to handle the appeal in *Yates I*. The trial court held that section 6146 prohibited charging such a fee in addition to the maximum contingent fee allowed by the statute. Once again, we find the court's interpretation and application of the statute to have been correct.

The primary rationale of the trial court's holding was that section 6146 fixes the maximum allowable contingent fee for a medical malpractice action as a whole, including an appeal after judgment, and the limitation may not be avoided by charging separate fees for segments of the case or by charging both contingent and hourly fees. This construction is strongly supported by the statute's language, which limits the contingent fee that may be charged "in connection with an *action* . . . against a health care provider based upon such person's alleged professional negligence . . . ." (§ 6146, subd. (a) (italics added).) As the trial court recognized, such an "action" embraces an appeal taken after judgment. Code of Civil Procedure section 1049 provides, "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." It thus plainly appears that Shore was limited to the section 6146 contingent fee for the entire case. He could not enhance that fee by truncating his contingent representation at the appellate threshold and charging additional, ostensibly noncontingent amounts for the appeal.

This statutory compulsion is undiminished by the subsequently enacted section 6147 of the Business and Professions Code, which prescribes the contents of contingent fee agreements generally. Shore reasons that Business and Professions Code section 6147, subdivision (a)(3), which requires contingent fee agreements to state "to what extent, if any, the plaintiff could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract," implicitly if not explicitly endorses separate appellate fees apart from the contingency. But whatever the significance of this language as to fee agreements not subject to section 6146, the latter agreements retain their original inclusivity and exclusivity, by the very terms of Business and Pro-

calculation in all cases with multiple plaintiffs. Although plaintiffs suggest that such a determination was made sub silentio in *Hathaway* v. *Baldwin Park Community Hospital* (1986) 186 Cal.App.3d 1247 [231 Cal.Rptr. 334], we do not so read the case. Future cases, presenting different configurations of plaintiffs, claims, and incidents of professional negligence, will merit their own evaluation. (Cf. *Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380, 1394-1395 [273 Cal.Rptr. 231].)

fessions Code section 6147. Subdivision (a)(5) of that section requires the fee agreement to contain, "[i]f the [plaintiff's] claim is subject to the provisions of Section 6146, a statement that the rates set forth in that section are the maximum limits for the contingency fee agreement, and that the attorney and client may negotiate a lower rate."

Shore also observes that an early version of the bill enacting Business and Professions Code section 6147 instead would have revised section 6146 to cover all contingent fees, and would have changed its scale to permit a higher percentage in cases that went through appeal. But the Legislature's failure so to alter section 6146, if anything, reconfirms that the statute does not contemplate enhanced fees for the appellate phase of a case.

Shore finally relies upon various provisions of his agreements with plaintiffs. But when those provisions are read together with section 6146, plaintiffs' alleged responsibility for the fee plainly vanishes. First, Shore was not entitled to recover McGrath's fee simply by characterizing it as part of the costs plaintiffs agreed to pay. Associated attorneys' fees are not generally within the scope of chargeable costs (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, §§ 139-140, pp. 162-163), and indeed they do not appear in the definition of costs in these agreements. Rather, McGrath's fee would appear to come within the provision authorizing Shore "to associate any other attorney or attorneys in his discretion, but at no expense to [the client] . . . ." Finally, the provision purporting to exclude appellate work from Shore's engagement did not comport with section 6146's regulation of contingent fees for a medical malpractice "action." Hence, Shore cannot rely upon that proviso, directly or indirectly. This means that even if, as Shore testified, plaintiffs authorized payment of additional fees to McGrath, they did so ineffectively, because the combined agreement for both fees was to that extent valid.

In sum, section 6146 did not permit Shore to charge additional fees for the appeal, either for himself or for his chosen associated counsel. We leave for another day the question whether a medical malpractice contingent fee client may independently engage a new attorney, for new consideration, for the appeal. That question is not presented by this case. As to the question that is presented, the trial court correctly ruled that section 6146 precluded Shore from charging plaintiffs the appellate fee for McGrath.

## DISPOSITION

The judgment is affirmed.

Gates, Acting P. J., and Klein (B.), J.,* concurred.

Appellants' petition for review by the Supreme Court was denied August 1, 1991.

---

* Assigned by the Chairperson of the Judicial Council.