Filed 10/9/13 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HAMID RASHIDI, | B237476 |
| Plaintiff, Respondent and Cross-Appellant, | (Los Angeles County Super. Ct. No. BC392082) |
| v. | MODIFICATION ORDER [NO CHANGE IN JUDGMENT] |
| FRANKLIN MOSER, M.D., | |
| Defendant, Appellant and Cross-Respondent. | |

THE COURT*

It is ordered that the published opinion filed September 23, 2013 be modified as follows:

The second paragraph of the caption page which lists counsel for Defendant, Appellant and Cross-Respondent shall be corrected to read:

"Reback, McAndrews, Kjar, Warford & Stockalper and Robert C. Reback; Cole Pedroza, Curtis A. Cole and Kenneth R. Pedroza for Defendant, Appellant and Cross-Respondent."

There is no change in judgment.

_____

*EPSTEIN, P.J.          MANELLA, J.          SUZUKAWA, J.

Filed 9/23/13 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HAMID RASHIDI,<br><br>    Plaintiff, Respondent and<br>    Cross-Appellant,<br><br>    v.<br><br>FRANKLIN MOSER, M.D.,<br><br>    Defendant, Appellant<br>    and Cross-Respondent. | B237476<br><br>(Los Angeles County<br>Super. Ct. No. BC392082) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Judge. Affirmed as modified.

Reback, McAndrews, Kjar, Warford & Stockalper and Robert C. Reback; Cole Pedroza and Curtis A. Cole for Defendant, Appellant and Cross-Respondent.

Tucker Ellis, E. Todd Chayet, Rebecca A. Lefler, Corena G. Larimer; and Fred J. Hiestand as Amici Curiae on behalf of Defendant, Appellant and Cross-Respondent.

Balaban & Speilberger, Daniel Balaban, Andrew J. Spielberger; Esner, Chang & Boyer, Stuart B. Esner and Holly N. Boyer for Plaintiff, Respondent and Cross-Appellant.

_____

In this case, we deal with the intersection of three statutes addressing the recovery of damages: Civil Code section 3333.2,[1] part of the Medical Injury Compensation Reform Act of 1975 (MICRA), limiting recovery of noneconomic damages for medical malpractice to a total of $250,000; section 1431.2, part of the Fair Responsibility Act of 1986 adopted by the passage of Proposition 51, which provides that liability for noneconomic damages is several only, in accordance with the percentage of fault; and Code of Civil Procedure section 877, which addresses the impact of a good faith settlement on settling and nonsettling tortfeasors.

Appellant Franklin Moser, a physician, challenges the damages awarded against him in this medical malpractice action, claiming the trial court should have offset the entire award, including both economic and noneconomic damages, based on pretrial good faith settlements by two codefendants. In his cross-appeal, respondent Hamid Rashidi raises constitutional challenges to the limitation on noneconomic damages in MICRA. We find appellant was entitled to an offset as to the economic damages awarded by the jury and to a portion of the noneconomic damages, and reject respondent's constitutional challenges to MICRA.

## FACTUAL AND PROCEDURAL SUMMARY

According to the allegations of the charging pleading, in April 2007, 26-year-old Rashidi went to the emergency room at Cedars-Sinai Medical Center with a severe nose bleed. He was treated and discharged. In May 2007, he again went to the emergency room at Cedars-Sinai for a severe nose bleed. This time, he was examined by Dr. Moser, who advised him "to have an operation to treat his nose bleeds and/or arteriovenous malformation."

The operation, an embolization procedure, was performed by Dr. Moser at Cedars-Sinai the same day. It involved insertion of a catheter into an artery in Mr. Rashidi's leg and up into the nose, and injection of embospheres into the catheter to permanently and

---

[1] All further statutory references are to the Civil Code, unless otherwise specified.

2

irreversibly occlude blood vessels. The embosphere microspheres used by Dr. Moser were manufactured by Biosphere Medical, Inc. When Rashidi regained consciousness, he was blind in one eye. The blindness is permanent.

Mr. Rashidi brought this action against Dr. Moser, Cedars-Sinai, and Biosphere Medical. He alleged causes of action against Dr. Moser and Cedars-Sinai for medical malpractice and medical battery. He also alleged causes of action against Biosphere Medical for product liability based on design or manufacturing defect, failure to warn, negligence per se, breach of express and implied warranty, and misrepresentation. The theory against Biosphere Medical was that the particles it manufactured had specific chemical and elastic physical qualities which enhanced their ability to travel through very small blood vessels and collateral veins, causing a significant risk that they would travel through the blood system to sites other than the intended surgical sites, and that they did so in this case, causing the blindness. Mr. Rashidi alleged that Biosphere failed to disclose this risk, and failed to disclose that the embosphere microspheres were of nonuniform size, instead marketing the product as being of uniform size which allowed for accurate targeting of particular arteries.

Mr. Rashidi settled with Biosphere Medical for $2 million. He settled with Cedars-Sinai Medical Center for $350,000. The settling defendants each moved for a determination that its settlement was in good faith. Notice of this motion was served on all parties, including Dr. Moser. The motions were unopposed and were granted by the court.

Trial proceeded against Dr. Moser, the remaining defendant. The jury found he was negligent in the diagnosis or treatment of Mr. Rashidi and that this negligence was a cause of injury to Mr. Rashidi. It awarded Mr. Rashidi $125,000 present cash value for future medical care resulting from this negligence, $331,250 for past noneconomic damages, and $993,750 for future noneconomic damages. In accordance with MICRA's cap on noneconomic damages, the court reduced the noneconomic damages to $250,000.

Dr. Moser argued there should be an offset against this judgment, based upon the pretrial settlements with Cedars-Sinai and Biosphere Medical that were found to be in

3

good faith.  The trial court rejected this argument, finding no basis for allocating the settlement sums between economic and noneconomic damages.  As the court explained, the agreements with the settling defendants did not make any such allocation, those defendants did not participate in the trial, and the jury was not requested to make any finding of proportionate fault attributed to the settling defendants.  Dr. Moser filed a timely notice of appeal.  Mr. Rashidi filed a cross-appeal, challenging the constitutionality of MICRA.

## DISCUSSION

### I

The issues raised by Dr. Moser concern the amount of economic and noneconomic offset he should have been given against the award of damages, based on the pretrial settlements by Cedars-Sinai and Biosphere Medical. The easier question—the right to an offset of economic damages—involves the interplay between Code of Civil Procedure section 877 and section 1431.2.

Code of Civil Procedure section 877 describes the impact of a good faith settlement on settling and nonsettling tortfeasors:  "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, . . . it shall have the following effect:  [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater.  [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties."

Section 1431.2 provides in pertinent part:  "(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint.  Each defendant shall be liable only for the amount of non-economic damages

4

allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

Section 1431.2 "retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses. On the other hand, the more intangible and subjective categories of damage were limited by [section 1431.2] to a rule of strict proportionate liability." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 600.) With respect to economic damages, codefendants are jointly and severally liable, but with respect to noneconomic damages, liability is several but not joint: "each defendant is liable for only that portion of the plaintiff's noneconomic damages which is commensurate with that defendant's degree of fault for the injury." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1198.)

As we have noted, in this case there was no allocation between economic and noneconomic damages in either of the good faith settlements.[2] "The absence of a court approved pretrial allocation of a settlement between economic and noneconomic damages does not preclude a court from making a postverdict allocation. . . . Some allocation of an undifferentiated settlement between economic and noneconomic damages is required because only the amount attributable to the joint responsibility for economic damages may be used as an offset." (*Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1320.)

In the absence of a pretrial allocation, courts have developed a method for applying the allocations of the jury verdict to the settlements. (*Espinoza v. Machonga* (1992) 9 Cal.App.4th 268, 276–277; see also *Poire v. C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1838-1839; *Greathouse v. Amcord, Inc.* (1995) 35 Cal.App.4th 831, 840–841.) The idea is to allocate the settlements so that they mirror the jury's apportionment of economic and noneconomic damages. (*Jones v. John Crane, Inc.* (2005) 132 Cal.App.4th 990, 1006.) This is done by calculating the

---

[2] Dr. Moser did not object to the good faith determination as to either settlement, nor did he ask the court at the time of either good faith hearing to make a determination as to the allocation of the settlement between economic and noneconomic damages.

5

percentage of the award attributable to economic damages in relationship to the entire award, and then applying that same percentage to the settlement. (*Espinoza v. Machonga, supra*, at p. 277.)  This will yield the portion of the settlement attributable to economic damages, for which the nonsettling defendant is entitled to an offset.

The jury awarded Mr. Rashidi a total of $1,450,000 against Dr. Moser.  Of this, $125,000 was for economic damages.  The percentage of the award attributable to economic damages is 8.62 percent.  Applying that percentage to the $2 million settlement with Biosphere Medical, we calculate that $172,400 of that settlement should be allocated to economic damages.  Under section 877, Dr. Moser is entitled to a reduction of the claim against him in that amount.  Since the jury's verdict for economic damages against Dr. Moser was only $125,000, the Biosphere Medical settlement completely offsets that portion of Dr. Moser's obligation to Mr. Rashidi.  The judgment should reflect this offset.

## II

The other settling defendant, Cedars-Sinai, and nonsettling defendant, Dr. Moser, are both healthcare providers, so the calculation of the percentage of the award attributable to economic damages is different.  These health care providers are entitled to the benefit of MICRA, which limits the amount of noneconomic damages a plaintiff may recover for injury by health care providers.

The relevant portion of MICRA is found in section 3333.2:  "(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.  [¶]  (b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)."

Because the MICRA cap applies, the noneconomic portion of the total award to be used in the percentage calculation must be reduced to $250,000.  (*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1101–1102; *Gilman v. Beverly California Corp.* (1991) 231 Cal.App.3d 121, 128–129.)  The total award for this purpose is $375,000:  $125,000 in economic damages and $250,000 in noneconomic damages.  The percentage of economic

6

damages to the total is 33.33 percent.  Applying that percentage to the $350,000 settlement with Cedars-Sinai, $116,655 of the settlement is attributable to economic damages; the remaining $233,345 is consequently attributable to noneconomic damages.

III

That brings us to the intersection of section 1431.2 and MICRA.  Ordinarily, each health care provider would pay its share of the noneconomic loss, based on its portion of liability, in accordance with the several but not joint obligation for noneconomic losses under section 1431.2.  (*Gilman v. Beverly California Corp., supra*, 231 Cal.App.3d at pp. 128–130.)  "A defendant bears the burden of proving affirmative defenses and indemnity cross-claims.  Apportionment of noneconomic damages is a form of equitable indemnity in which a defendant may reduce his or her damages by establishing others are also at fault for the plaintiff's injuries.  Placing the burden on defendant to prove fault as to nonparty tortfeasors is not unjustified or unduly onerous."  (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 369.)  It is similarly reasonable to place the burden on a nonsettling defendant to prove fault as to settling tortfeasors for purposes of apportioning noneconomic damages.

At trial, Dr. Moser presented no evidence that Cedars-Sinai was at fault, and the court ruled he had presented insufficient evidence to support instructions on that theory as to Biosphere Medical.[3]  The special verdict form asked the jury to determine if Dr. Moser was negligent in the diagnosis and treatment of Mr. Rashidi, and, if so, whether that negligence was a cause of injury to him.  The jury answered both questions in the affirmative.  Mr. Rashidi argues that since Dr. Moser is the only defendant found at fault, Dr. Moser is liable for all of the MICRA-reduced noneconomic damages of $250,000.  This result is consistent with the express purpose of section 1431.2, "to eliminate the perceived unfairness of imposing 'all the damage' on defendants who were 'found to share [only] a fraction of the fault.'  [Citation.]"  (*DaFonte v. Up-Right, Inc., supra*, 2 Cal.4th at p. 603.)  Under section 1431.2, since there was no apportionment of

_____

[3] Dr. Moser does not challenge that ruling on appeal, nor does he claim there was error in the special verdict form.

7

fault to another, Dr. Moser would be liable for the entire amount of noneconomic damages, *if MICRA did not apply to this case.*

But MICRA does apply, and it sets an absolute limit on the total amount of damages a plaintiff can recover from health care providers for noneconomic losses. Dr. Moser urges us to apply the portion of Cedars-Sinai's settlement with Mr. Rashidi which was attributable to noneconomic damages up to the MICRA maximum of $250,000 recovery for noneconomic damages. Under that approach, Mr. Rashidi would be entitled to recover only a total of $250,000. Since $233,345 from Cedars-Sinai is attributable to noneconomic damages, he could recover only an additional $16,655 from Dr. Moser for noneconomic damages. This is consistent with the way MICRA has phrased its damages cap: "In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)." Nothing in the statute addresses the proportionate share each healthcare provider must pay for noneconomic damages. Instead, the focus is on the total amount of damages for noneconomic loss an injured plaintiff may recover from *all* defendant healthcare providers in a single action. This serves the purpose of MICRA: "to reduce the cost of medical malpractice litigation, and thereby restrain the increase in medical malpractice insurance premiums." (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 159 (*Fein*).)

Mr. Rashidi seeks to avoid this result, relying on language in *Hoch v. Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48, 67–68 (*Hoch*). In *Hoch*, as in our case, the noneconomic damages paid in settlement exceeded the settling parties' proportionate share of fault. After trial, the court applied section 1431.2 and held the nonsettling defendant liable for the portion of noneconomic damages consistent with its percentage of fault; it did not offset that amount by the noneconomic damages received in settlement. As a result, plaintiffs' net recovery of noneconomic damages exceeded the amount awarded at trial. In allowing this, the court relied on language in *Duncan v. Cessna Aircraft Co.* (Tex. 1984) 665 S.W.2d 414, 431–432 (*Duncan*): "[S]ettlement dollars are not the same as damages. Settlement dollars represent a contractual estimate of the value of the settling tortfeasor's liability and may be more or less than the proportionate share

8

of the plaintiff[']s damages. The settlement includes not only damages, but also the value of avoiding the risk, expense, and adverse public exposure that accompany going to trial. There is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he could receive as damages." Neither the *Hoch* case, nor the *Duncan* case on which it relies, had to consider a damages cap such as that in MICRA.

"To the extent a specific statute is inconsistent with a general statute potentially covering the same subject matter, the specific statute must be read as an exception to the more general statute." (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 857.) While section 1431.2 protects any joint tortfeasor from paying more than its proportionate share of noneconomic damages, MICRA prohibits a plaintiff from recovering more than $250,000 for noneconomic damages from all healthcare providers in the same action. MICRA does not distinguish between settlement dollars and judgments; it addresses a plaintiff's total recovery for noneconomic losses. Since MICRA, with its absolute limit on the total recovery of noneconomic damages from health care providers, is the more specific statute, we read it as an exception to the more general limitation on liability in section 1431.2.

IV

We turn to Mr. Rashidi's cross appeal, in which he challenges the constitutionality of MICRA. As the court observed in *Stinnett v. Tam* (2011) 198 Cal.App.4th 1412, 1419, "After MICRA's enactment, judicial challenges to various provisions of MICRA were abundant, but unsuccessful." We find settled, well-reasoned authority rejecting each of the constitutional claims.

Mr. Rashidi's first claim is that the $250,000 damages cap violates a plaintiff's constitutional right to a jury trial. In *Yates v. Pollock* (1987) 194 Cal.App.3d 195, 200, the court characterized this same claim as "an indirect attack upon the Legislature's power to place a cap on damages." (*Ibid*.) In *American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 368–369 (*American Bank*) and *Fein, supra,* 38 Cal.3d at p. 158, the Supreme Court confirmed that a plaintiff has no vested property right in a

9

particular measure of damages, and the Legislature has broad authority to modify the scope and nature of such damages. "'So long as the measure is rationally related to a legitimate state interest, policy determinations as to the need for, and the desirability of, the enactment are for the Legislature.'" (*Fein, supra*, at p. 158, quoting *American Bank, supra*, at pp. 368–369.) The Supreme Court found that the $250,000 ceiling on the recovery of noneconomic damages is rationally related to the objective of reducing the costs of medical malpractice litigation and in that way restraining the costs of medical malpractice insurance premiums. (*Id*. at p. 159.) The court found no California case suggesting "that the right to recover for noneconomic injuries is constitutionally immune from legislative limitation or revision." (*Id*. at pp. 159–160.)

In *American Bank, supra*, 36 Cal.3d at page 376, the court explained that the constitutional guarantee of jury trial operates at the time of trial to require submission of certain issues to the jury. Once a verdict has been returned, the effect of the constitutional provision is to prohibit improper interference with the jury's decision. There is no such improper interference under MICRA. The issue of damages is still submitted to the jury. The subsequent reduction of the damages awarded—either under the periodic payment provision challenged in *American Bank* (Code Civ. Proc., § 667.7), or under the damages cap challenged in this case—does not improperly interfere with the jury's decision. (*American Bank, supra*, 36 Cal.3d at pp. 376–377; *Yates v. Pollock, supra,* 194 Cal.App.3d at p. 200.)

Next, Mr. Rashidi claims the damages cap violates equal protection because it "arbitrarily imposes a one-size-fits-all" $250,000 limit on the noneconomic damages a plaintiff may receive in a medical malpractice action, regardless of the jury's findings as to the extent and severity of a plaintiff's injuries. In *Fein, supra*, 38 Cal.3d at pages 161–162, the Supreme Court considered and rejected a similar claim. The Legislature had a rational basis for enacting the damages limitation, and sought to obtain the desired cost savings only by limiting noneconomic damages. This limitation applies equally to all plaintiffs, without precluding the more seriously injured plaintiff from obtaining complete compensation for out-of-pocket medical expenses or lost earnings. (*Id*. at

10

p. 162; *Stinnett v. Tam, supra*, 198 Cal.App.4th at p. 1425.) Mr. Rashidi's argument regarding the need to adjust the MICRA cap so that it is indexed for inflation should be directed to the Legislature. (See *Stinnett v. Tam, supra*, at p. 1432.)

Mr. Rashidi also argues that section 3333.2 violates the separation of powers by requiring the courts to enter judgment in an amount unrelated to the facts found by the jury. The Supreme Court has recognized the authority of the Legislature to limit the recovery of noneconomic damages. (*Fein, supra*, 38 Cal.3d at pp. 157–160.) The Legislature possesses broad authority to establish or to abolish tort causes of action. (*Cory v. Shierloh* (1981) 29 Cal.3d 430, 439.) Although that authority necessarily affects the work of the judiciary, it does not impermissibly impinge on that separate branch of government. We find no violation of the separation of powers by the requirement that the court reduce awards of noneconomic damages to comply with the MICRA ceiling.

## DISPOSITION

The judgment is modified to reflect an offset against economic damages in the amount of $125,000 and a reduction of the noneconomic damages to $16,655. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

## CERTIFIED FOR PUBLICATION

EPSTEIN, P. J.

We concur:

MANELLA, J.

SUZUKAWA, J.

11