[No. B006143. Second Dist., Div. Five. Aug. 14, 1985.]

DENISE J. SEMSCH, Plaintiff and Respondent, v.
HENRY MAYO NEWHALL MEMORIAL HOSPITAL et al.,
Defendants and Appellants.

**COUNSEL**

Mortl & Farrell, Patty Mortl, Edmund G. Farrell III and Thomas & Price for Defendants and Appellants.

Donald C. Lozano, Lascher & Lascher and Edward L. Lascher for Plaintiff and Respondent.

**OPINION**

**LAVINE, J.**\*—Plaintiff Denise J. Semsch (Semsch) sought damages for injuries she suffered during a hospitalization at defendant Henry Mayo Newhall Memorial Hospital caused by the administration of an injection by defendant nurse, Betty Donnelly (Donnelly). The injection, administered at an improper location upon plaintiff, caused conditions which in turn led to degenerative disc conditions and back surgeries. A jury found in special verdicts that defendants were negligent, that such negligence proximately caused the injuries, and that the total amount of plaintiff's damage was $380,000. This sum was reduced by a finding of contributory negligence of 13 percent, resulting in a net judgment of $330,600.

On appeal, defendants concede liability, and challenge the damage award by reason of alleged refusal to accept testimony bearing upon plaintiff's future employment possibilities, and because the undifferentiated damage award exceeded the amount allowable under Civil Code section 3333.2.

---

\*Assigned by the Chairperson of the Judicial Council.

BACKGROUND FACTS

Plaintiff, age 28 at the time of trial, had been certified as a medical assistant and hired to work in a doctor's office. Upon a doctor's recommendation she underwent surgery in 1979 for venereal warts. After minor surgery, she suffered from nausea as a result of the general anesthetic. When she told the nurses about it, defendant nurse, Donnelly, gave her an injection. She later suffered numbness and loss of sensation on the right buttock area where the injection had been administered. Her neurologist was of the opinion that an injection at the point where administered was below the standard of care of a reasonably prudent nurse, and that it caused plaintiff to sustain a sciatic neuropathy. This condition distorted the way plaintiff walked, causing a deterioration in a previously harmless spondyolysis condition, which in turn produced subsequent disc injury. As a result she had several operations.

Because of this injury and its aftermath, plaintiff will be incapable of work requiring any awkward positions, will have to be guarded concerning her back, and will continue to have discomfort in that area for the foreseeable future. During 1981 she had other unrelated medical problems and was discharged from her job by a Dr. Winn. In June 1982 she became a student assistant at Santa Monica Hospital, and later a full-time nursing assistant. She passed her tests and was certified as an LVN, working in that role at Santa Monica Hospital from December 1982 until she was involuntarily terminated in February 1983. As a medical assistant plaintiff never earned more than $750 per month, but as an LVN she earned $400-500 every two weeks until she lost her job.

Witnesses testified as to plaintiff's inability to perform a job requiring repeated bending, lifting or awkward positions. Plaintiff testified she had lied on her application about her back problems in order to get a job as a nurse at Santa Monica Hospital. Her employment records were introduced to show that her performance as a nurse's aide at Santa Monica Hospital was excellent. She stated she was fired because of absenteeism, inferentially attributable to her back condition. Defendant's counsel made an offer of proof that plaintiff's supervisor would testify that plaintiff was fired for diverting drugs, and that the subject matter of exhibit No. 16 for identification would show such drug diversion and the action taken by the hospital when it was discovered.

ISSUES

1. Did the trial court erroneously exclude evidence of the reason for plaintiff's discharge from employment as an LVN at Santa Monica Hospital? No.

2. Did the trial court err in refusing defendants' request for a postverdict interrogatory on allocation of damages, in view of Civil Code section 3333.2? Yes.

DISCUSSION

1. *Did the trial court erroneously exclude evidence of the reason for plaintiff's discharge from employment as an LVN at Santa Monica Hospital? No.*

Defendants' attorney raised the issue of exclusion of drug diversion evidence on two occasions during the trial. On the second occasion defendants contend that an offer of proof was made that plaintiff's supervisor would testify that plaintiff was fired for diverting drugs, and that exhibit No. 16 for identification contained records showing such drug diversion and the action taken by the hospital when it was discovered. It is further alleged that the offered exhibit and related testimony would have established that during a five-day period plaintiff as an LVN had checked out more narcotics than were checked out by all nurses on other shifts, that there were discrepancies in plaintiff's checking out of drugs, and that she had checked out narcotics for a patient who denied receiving the injection and that when plaintiff was confronted with this fact she produced the narcotic and syringe stating she was going to give it later; that following this incident, plaintiff was called into conference with hospital authorities, an inquiry was held, and plaintiff was terminated.

We find nothing in the record that exhibit No. 16 for identification, which is the record of plaintiff's employment at Santa Monica Hospital, was ever offered into evidence by plaintiff or defendants. Because of its relation to the alleged offer of proof, exhibit No. 16 for identification is examined by us. Portions of this voluminous exhibit contain comments of plaintiff's superiors, including a warning about excessive absences, and that the narcotics use was up during her shifts. It states that "Denise Semsch recently licensed LVN of 6 wks. terminated for inconsistent documentation, inappropriate professional nursing assessment & judgments and failure to follow medication controlled substances policies and doctors orders." (Notation in log of Feb. 8, 1983, by Jackline C. Knable, R.N.)

The hospital log also contains statements by the head nurse that plaintiff denied drug diversion and became very agitated, that she agreed to give a urine sample for Demerol isolation, that she was on pain medication for an abortion done on January 27, 1983, under a doctor's prescription, and that she was terminated effective immediately.

Defendants contend that the court committed prejudicial error in refusing to allow plaintiff to be questioned as to why she was fired. The offer of proof was: "I will make an offer of proof at this time that I will expect to prove, if not through the testimony of this witness [plaintiff], through the testimony of the same person whose evaluations were just read, that she was fired for diverting drugs." The court stated, in ruling on this motion and request: "Well, I'm going to deny the motion, or deny the request to cross-examine her with regard to her being fired for drug diversion.

"However, I think that he is entitled, either by cross-examination or by stipulation, to establish that she was not fired for excessive absenteeism, or that she was not fired because she was not able to perform her job."

Defendants contend that plaintiff should have been cross-examined on the issue of drug diversion and that the offer of proof as to the reasons why she was discharged should have permitted testimony to be admitted for at least two reasons: first, because it was relevant as to whether plaintiff would ever be able to get another job as an LVN if she was discharged for drug diversion; and second, because such could be used to impeach plaintiff's testimony that she was discharged because of excessive absences.

█ Since defendants did not offer exhibit No. 16 into evidence, which would have entitled plaintiff to raise any objections to such evidence and would have given the court an opportunity to rule upon any objections, there is no error shown as to any alleged refusal to admit exhibit No. 16.

█ As to the alleged offer of proof it is quite deficient. An offer of proof must consist of material that is admissible, it must be specific in indicating the purpose of the testimony, the name of the witness and the content of the answer to be elicited.

█ "Where required, the offer of proof must consist of matter which would be *admissible*. If a general offer is made to prove a number of things, without segregation, and it includes some inadmissible matter, the entire offer may be rejected. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"The offer of proof must be *specific* in its indication of the purpose of the testimony, the name of the witness, and the content of the answer to be elicited. The judge may properly reject a general or vague offer which does not indicate with precision the evidence to be presented and the witnesses

who are to give it . . . ." (Witkin, Cal. Evidence (2d 1966) Form of Offer, § 1311, p. 1212.)

Merely setting forth the substance of facts to be proved does not constitute compliance with Evidence Code section 354, subdivision (a). (*United Sav. & Loan Assn.* v. *Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 294 [129 Cal.Rptr. 113].)  ▮ The offer of proof here lacked specificity. Although it contained the names of alternate witnesses who might testify (plaintiff or the hospital evaluator) and the purpose of the testimony, it did not give the precise testimony to be offered by either of these witnesses.

It was highly important that this particular offer of proof be made with specific testimony to be elicited and the person giving such testimony to be pinpointed, for the following reasons: The subject matter may have been relevant on the issue of plaintiff's ability to get a job in the future as an LVN, when faced with a possible negative reference from Santa Monica Hospital if queried by another prospective employer; also, it would be relevant to impeach plaintiff's testimony that she was fired for absenteeism.

However, until the proffered testimony is presented in proper form, plaintiff is not able to raise appropriate evidentiary objections, and it is difficult for the trial court to formulate a proper ruling on admissibility under Evidence Code section 352. It is obvious that objections which could have been raised to a proper offer may include an objection that plaintiff was incompetent to testify as to the reasons why others terminated her employment although she could relate statements made, if no hearsay objections were raised. As to testimony by the head nurse, hearsay, opinion and best evidence objections could have been raised.

Exhibit No. 16 for identification contains material showing that termination of plaintiff's employment might have been made for her excessive absences, her attitude toward her superiors, her failure to obey orders, drug diversion in the sense that she might have sold the drug elsewhere, or that she herself was using the drugs. The reason for plaintiff's discharge only becomes relevant if this reason is to be passed on to any prospective employer who asks for a reference from Santa Monica Hospital. In the absence of a precise offer of proof as to the testimony to be elicited from a known witness, neither the trial court nor this court can ascertain the form of expected testimony in which the reason or reasons for the discharge are given. Were reasons stated to plaintiff? We have nothing in the record to show the latter.

The determination by the trial judge to limit the evidence concerning "drug diversion" was essentially a ruling under Evidence Code section 352

which was well within the trial judge's discretion, upon a balancing of the factors.

For these reasons there was no error in the court's rulings as to the proffered testimony.

2. *Did the trial court err in refusing defendants' request for a postverdict interrogatory on allocation of damages, in view of Civil Code section 3333.2? Yes.*

In their answers to plaintiff's complaint, defendants set forth as an affirmative defense the provisions of Civil Code section 3333.2, subdivisions (a) and (b) which state: "(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.

"(b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)."

There is a dispute between plaintiff and defendants as to whether defendants made any pretrial motion to apply the statutory limit. The record is confused as to whether any such motion was made.

When the jury verdict was given, counsel made a motion outside the presence of the jury asking for a special interrogatory that the jury specify the damages that are represented by "general damages." The court then recognized that defendants were asking for the jury to be given a special interrogatory to set forth the noneconomic damages, to determine if it is in fact less than $250,000. The court then stated that it had consistently turned down any such request during the trial because the court deemed the statute unconstitutional. The judge made it clear that if the special interrogatory were actually proffered it would be turned down on the basis of unconstitutionality.

Hence defendants have properly raised the constitutional issue, and it would have been of little value to the trial court or on appeal that a special interrogatory actually be drafted, proffered to the court, and again formally refused.

*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137 [211 Cal.Rptr. 368, 695 P.2d 665] is dispositive of this issue by declaring Civil Code

section 3333.2 constitutional with respect to the $250,000 limit on noneconomic damages in health provider cases.

Plaintiff and defendants did not agree in their respective briefs as to which portion of the gross $380,000 award constitutes economic as opposed to noneconomic damages. In the absence of a special verdict or interrogatory stating the amount of economic damages, ordinarily we would be required to remand the case for retrial on the issue on damages. However during oral argument counsel for plaintiff stated that the total economic damages may be considered as being $30,000, and counsel for defendants stated that such figure would be acceptable to defendants. Accordingly, in order to conserve judicial resources, we shall simply modify the judgment and reduce it to the net sum of $243,600.[1] If plaintiff is not satisfied with such a modification and desires instead to retry the issue of damages, then plaintiff may petition this court, within the time to petition for rehearing, requesting that the case be remanded to the trial court for retrial on the issue of damages only. Each party is to bear its own costs on appeal.

Ashby, Acting P. J., and Hastings, J., concurred.

---

[1] The gross verdict was $380,000. If the total economic damages be considered as totalling $30,000, the addition of $250,000 permissible noneconomic damages equals a gross total of $280,000. Reducing the gross total by the finding of contributory negligence of 13 percent results in a net judgment of $243,600.