[No. B028475. Second Dist., Div. Four. Nov. 21, 1989.]

DORETHA McADORY, Plaintiff and Appellant, v.
WILLIAM C. ROGERS, Defendant and Respondent.

COUNSEL

Michael J. Piuze for Plaintiff and Appellant.

Patterson, Ritner, Lockwood, Zanghi & Gartner, Gregory P. Orland and John S. Popko for Defendant and Respondent.

Horvitz & Levy, Frederic D. Cohen, S. Thomas Todd and Daniel J. Gonzalez as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**McCLOSKY, J.**—In this action for medical malpractice, plaintiff Doretha McAdory appeals from "the judgment." That judgment awarded Ms. McAdory $218,400 against defendant Dr. William C. Rogers, M.D. Ms. McAdory contends that the trial court improperly applied the $250,000 cap in noneconomic damages embodied in Civil Code section 3333.2[1] in reducing the jury's award. Dr. Rogers initially appealed but has abandoned that appeal. Pursuant to Dr. Rogers's request, we judicially notice the order dismissing his appeal and also take judicial notice of all of the briefs in the case of *Semsch* v. *Henry Mayo Newhall Memorial Hospital* (1985) 171 Cal.App.3d 162, 170 [216 Cal.Rptr. 913], and deny the request to take judicial notice of a letter to Governor Edmund G. Brown, Jr., dated June 20, 1975. Ms. McAdory has abandoned her appeal with respect to the County of Los Angeles.

### BACKGROUND

Following trial, the jury returned a special verdict finding that Dr. Rogers negligently rendered medical treatment to plaintiff. The jury found that plaintiff suffered noneconomic damages of $370,000 and economic damages of $30,000. The jury also found that Ms. McAdory was 22 percent comparatively negligent. After the jury rendered its verdict the parties took contrary positions as to whether the court should apply section 3333.2 before or after it reduced the jury's award due to Ms. McAdory's comparative fault. The court adopted Dr. Rogers's position and ruled: "The total non-economic damages of $370,000.00 awarded to plaintiff is reduced to the MICRA limit of $250,000.00. To said sum of $250,000.00 shall be added economic damages in the amount of $30,000.00 for a total award of $280,000.00. The total award of $280,000.00 shall be reduced by the sum of $61,000.00 which represents the comparative negligence of the plaintiff of 22% and found by the jury, leaving a net judgment to the plaintiff of $218,400.00."

---

[1] All statutory references herein are to the Civil Code.

## CONTENTIONS

1. "Section 3333.2 should not be construed to reduce the $250,000 cap by an injured party's comparative fault."

2. "California public policy requires that defendants in tort actions be held financially liable in close proportion to their degree of fault."

## DISCUSSION

Section 3333.2 provides in pertinent part: "(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage. [¶] (b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)."

 The sole issue in this appeal is whether the trial court properly reduced Ms. McAdory's noneconomic damages to $250,000 *before* rather than after it factored in her comparative fault. Had the court factored in Ms. McAdory's comparative fault before it applied section 3333.2, she then would be entitled to $250,000 in noneconomic damages rather than $195,000.

Before we independently analyze this issue, we first determine whether we are writing on a clean slate. Dr. Rogers and amici both argue that this issue has already been resolved in *Semsch* v. *Henry Mayo Newhall Memorial Hospital, supra,* 171 Cal.App.3d 162. In *Semsch,* the trial court refused to apply section 3333.2, ruling that it was unconstitutional. While the defendant's appeal was pending, the Supreme Court rendered its opinion in *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137 [211 Cal.Rptr. 368 [695 P.2d 665] upholding the constitutionality of section 3333.2. Following *Fein,* the Court of Appeal in *Semsch* was required to uphold the validity of section 3333.2 and therefore reverse the trial court. Rather than remand the matter to the trial court, the Court of Appeal applied section 3333.2 on its own. In so doing, the court, without any discussion or statement of reasons for so doing, reduced the plaintiff's noneconomic damage award to $250,000 before it factored in the plaintiff's 13 percent comparative fault. Ms. McAdory argues that the absence of any discussion by the *Semsch* court renders its application of section 3333.2 dicta. In urging us to follow *Semsch,* amici refer us to the briefs in that case and claim that the issue now before us was "expressly argued" in *Semsch.*

■ An appellate opinion is "not authority for propositions not there considered." (*People* v. *Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233 [526 P.2d 241].) In *Semsch,* the court relegated its method of application of section 3333.2 to a footnote devoid of any discussion of why it was reducing the plaintiff's noneconomic damage award to $250,000 before it factored in the plaintiff's comparative fault. As material in footnotes is merely parenthetic to a court's opinion, this is a further indication that the *Semsch* court may not have fully considered the ramifications of the approach it took. Reference to the briefs does nothing to alter this view. (See *Pacific Indem. Co.* v. *Transport Indem. Co.* (1978) 81 Cal.App.3d 649, 659, fn. 2 [146 Cal.Rptr. 648] ["Reference to briefs is a permissible method of ascertaining what issues were before a court (citation)."].) In *Semsch,* the defendant discussed how section 3333.2 should be applied as sparsely as did the court. The defendant's entire discussion of that issue was contained in a footnote in its reply brief. This treatment does not bespeak an issue considered important by the parties. In any event, even assuming the application of section 3333.2 in *Semsch* was fully considered by the court, that opinion would not be binding on us. (*Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1147 [209 Cal.Rptr. 890], disapproved on other grounds in *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 427, fn. 28 [253 Cal.Rptr. 426 [764 P.2d 278].) We, therefore, undertake a fresh review of this issue.

Section 3333.2 was enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA). Several months prior to the enactment of MICRA the Supreme Court adopted a system of "pure" comparative fault in California. In *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d, 804, 829 [119 Cal.Rptr. 858 [532 P.2d 1226, 78 A.L.R.3d 393], the court held that "in all actions for negligence resulting in injury to person or property, the contributory negligence of the person injured . . . shall not bar recovery, but the *damages awarded* shall be diminished in proportion to the amount of negligence attributable to the person recovering." (Italics added.) To determine how this principle interacts with section 3333.2, we must ascertain what are the noneconomic "damages awarded" in a medical malpractice action. Does that term describe the noneconomic damages award before the $250,000 cap is applied or does it describe the damages after that cap is applied?

■ Ms. McAdory contends that section 3333.2 was intended to cap the *recovery* of noneconomic damages rather than the damages the plaintiff actually suffers. In other words, she urges that under section 3333.2, a plaintiff could suffer more than $250,000 in noneconomic damages but is precluded from *recovering* any more than that amount. Dr. Rogers and amici assert to the contrary that section 3333.2 "limits the monetary value

of noneconomic losses to $250,000." To support this assertion, they point to the language of section 3333.2, subdivision (b) which states that "[i]n no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)." While at first blush this subdivision might appear susceptible to Dr. Rogers' interpretation, such an interpretation would run afoul of the principle of statutory construction that "statutes [should] not be construed in a manner leading to an absurdity, if they may be construed to achieve justice and common sense." (*Bank of America* v. *Cory* (1985) 164 Cal.App.3d 66, 75 [210 Cal.Rptr. 351].)

 "Damage" is defined by Black's Law Dictionary to be the "loss, injury, or deterioration, caused by the negligence, design or accident of one person to another, in respect of the latter's person or property." Legislative fiat alone cannot limit the extent to which a medical malpractice victim is damaged. It can only limit the *recovery* of those damages. This case serves as a prime example: Here, the jury after evaluating the evidence concluded that Ms. McAdory suffered $370,000 in noneconomic damages. Dr. Rogers does not argue that there is insufficient evidence to support that award. Nor does he argue that prejudicial error otherwise infects that award. We are, therefore, bound by the determination at trial that Ms. McAdory actually suffered noneconomic damages in the amount of $370,000. Section 3333.2 does not cause those noneconomic damages Ms. McAdory suffered in excess of $250,000 to vanish. Instead, that section merely reflects a legislative policy decision to bar the recovery of more than $250,000 of those damages. (See *Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d 137, 163.)

 Dr. Rogers argues that reducing an award by comparative fault prior to applying section 3333.2 violates the fundamental purpose of comparative fault as announced in *Li* to "assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties." (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, 829.)

To support this assertion, Dr. Rogers employs a hypothetical case in which a plaintiff, 25 percent comparatively at fault, is awarded noneconomic damages of $400,000. Under Ms. McAdory's approach that award is first reduced to $300,000 due to the plaintiff's comparative fault and then reduced to $250,000 due to application of section 3333.2. Dr. Rogers then alters the hypothetical so that the plaintiff is not comparatively at fault. The faultless plaintiff recovers the same $250,000 as the plaintiff 25 percent at fault. Based upon this hypothetical, Dr. Rogers argues that "[Ms. McAdory's] theory creates only the illusory calculation of applying comparative negligence. The hypothetical plaintiff in reality feels no pain for his comparative negligence. This shell game is inconsistent with the principles laid

down by *Li* because [*Ms. McAdory's*] *formula does not require her to bear the burden of her 22 percent comparative negligence.*" (Italics in original.)

Dr. Rogers operates under the mistaken notion that the purpose of comparative fault is to punish the partially negligent plaintiff. Not so. Instead, the primary goal of the comparative fault system is to "[maximize . . . ] recovery to the injured party for the amount of his injury to the extent fault of others has contributed to it. . . ." (*Sears, Roebuck & Co.* v. *International Harvester Co.* (1978) 82 Cal.App.3d 492, 496 [147 Cal.Rptr. 262].) Dr. Rogers's position runs roughshod over this goal. The seeming disparity in treatment between the plaintiffs in Dr. Rogers's hypothetical is solely the result of section 3333.2. The plaintiff, partially at fault in Dr. Rogers's hypothetical, is already recovering an amount less than the jury determined he or she was damaged by the tortious conduct of others due to section 3333.2. No purpose would be served by further reducing that plaintiff's award.

One need only alter Dr. Rogers's hypothetical to clearly illustrate the fallacy of his position. A young plaintiff rendered quadriplegic as a result of the defendant's medical malpractice is determined to be 10 percent comparatively at fault and is awarded $1 million in noneconomic damages. Under Dr. Rogers's position, this plaintiff's noneconomic damage award, already reduced to $250,000, will be further reduced by another $25,000 even though the jury found that the fault of others proximately caused him $900,000 in noneconomic damages. That further $25,000 reduction would not serve to bring the award into alignment with principles of comparative fault. There is no reason why any proper application of the language of section 3333.2 should result in his 10 percent comparative fault limiting his recovery to 22.5 percent of his $1 million noneconomic damages instead of 25 percent of those damages.

 Equally lacking merit is Dr. Rogers's contention that his approach is "consistent with MICRA's legislative intent." Dr. Rogers premises this contention on the fact that the Legislature enacted MICRA to reduce medical malpractice insurance premiums by, in part, limiting recoveries in malpractice actions. Since his approach results in lower recoveries, Dr. Rogers argues it is more consistent with the Legislature's intent. We disagree. Merely because Dr. Rogers's position would result in smaller recoveries in medical malpractice actions is insufficient reason to establish what the Legislature intended. The Legislature intended to accomplish its cost-cutting goal in a "'reasonable manner'" (*Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 56 [210 Cal.Rptr. 781, 694 P.2d 1153].) As reflected by the foregoing discussion, Dr. Rogers's approach would not fulfill this goal.

Finally in support of their position, Dr. Rogers and amici rely upon cases discussing how a good faith settlement is set off in cases where the plaintiff is comparatively at fault. In *Jaramillo* v. *State of California* (1978) 81 Cal.App.3d 968 [146 Cal.Rptr. 823], the plaintiff sued the state and one Mr. Jones for injuries arising from an automobile accident. Prior to trial, the plaintiff and Mr. Jones entered into a good faith settlement for $350,000. The plaintiff then proceeded to trial against the state. The jury found that plaintiff's total damages were $500,000 and that plaintiff was 33.3 percent comparatively at fault. Based upon these findings, the jury awarded plaintiff $333,500. The court then quite properly set off from that amount the $350,000 good faith settlement. On appeal, the plaintiff contended that the court should have set off the settlement before the verdict was reduced by his comparative fault.

In rejecting the plaintiff's contention, the Court of Appeal concluded: "Assuming there had been no settlement, plaintiff would not recover his total damages; they would have to be reduced in the proportion plaintiff's responsibility for his injuries bears to the whole since he can recover only those damages not occasioned by his negligence. [Citation.] Furthermore, a plaintiff may not recover in excess of the amount of damages which will fully compensate him for his injury. [Citations.] Plaintiff's interpretation of the *Li* decision, however, would permit him to recover damages attributable to his own negligence and would also violate the prohibition against double recovery. Moreover, Code of Civil Procedure section 877 requires that a judgment be reduced by amounts paid by settling joint tortfeasors. This statutory directive of itself defeats plaintiff's claim. [Citation.]" (*Jaramillo* v. *State of California, supra,* 81 Cal.App.3d at pp. 970-971.)[2]

Dr. Rogers's reliance on *Jaramillo* is misplaced. Setting off a good faith settlement before a verdict is reduced by the plaintiff's comparative fault would allow the plaintiff to recover damages which the jury found were caused by him. The same risk does not exist when a verdict is reduced by comparative fault before section 3333.2 is applied. By definition, as long as the entire verdict is reduced by the plaintiff's comparative fault, there is no chance that the plaintiff will recover damages which the fact finder determined he caused.

The issue presented here is much closer to the issue in *Young* v. *Berry Equipment Rentals, Inc.* (1976) 55 Cal.App.3d 35 [127 Cal.Rptr. 200]. There, the issue was the method of computing a workers' compensation setoff where the plaintiff's potential recovery against the defendant is

---

[2] Dr. Rogers and amici also rely upon *Lemos* v. *Eichel* (1978) 83 Cal.App.3d 110 [147 Cal.Rptr. 603], in which the court reached the same result as in *Jaramillo* for similar reasons.

limited to the $15,000 prescribed by Vehicle Code section 17151, subdivision (a). In *Young*, the plaintiff was involved in a forklift accident at work. The plaintiff received $6,866.64 in workers' compensation benefits. He then proceeded to trial against the owner of the forklift. Defendant's attorney stipulated that the plaintiff's minimum damages were $21,866.64. The trial court reduced the plaintiff's recovery to the statutory $15,000 limit set out in the Vehicle Code and then set off the plaintiff's workers' compensation benefits leaving the plaintiff with a total recovery of $8,233.36. On appeal, the court concluded that the plaintiff's workers' compensation recovery should have been set off before the judgment was reduced to conform to the Vehicle Code. In reaching this conclusion, the court explained: "The computation utilized by the trial judge was manifestly unfair. Appellant suffered damages in the sum of $21,866.64. We see no logic or fairness in reducing appellant's recovery below the statutory liability as long as he does not receive a double recovery . . . . To permit such a procedure would be to deprive appellant of his right to full compensation for his injuries and would give respondent an unjustified windfall."[3] (*Young* v. *Berry Equipment Rentals, Inc., supra,* 55 Cal.App.3d at p. 42.)

██ A similar logic applies here. Ms. McAdory suffered noneconomic damages of $370,000. There is no legitimate or logical reason for reducing that award to the $250,000 cap prescribed by section 3333.2 *before* reducing it further due to Ms. McAdory's 22 percent comparative fault. Accordingly, we reverse.

The judgment is reversed. The matter is remanded to the trial court which is directed to amend the judgment to award Ms. McAdory $250,000 in noneconomic damages. Ms. McAdory shall recover her costs on appeal.

Woods (A. M.), P. J., and Goertzen, J., concurred.

---

[3] In *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 512 [156 Cal.Rptr. 41, 595 P.2d 619], the court, employing similar reasoning as in *Young,* concluded that the jury's verdict should be reduced proportionate to his comparative fault before there is any setoff due to his employer's negligence.