[No. H005882. Sixth Dist. June 12, 1991.]

LOUISE GILMAN et al., Plaintiffs and Appellants, v.
BEVERLY CALIFORNIA CORPORATION, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication only as to the Introduction and from part D. through the end of the opinion.

COUNSEL

Hoge, Fenton, Jones & Appel and James E. Towery for Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Michael H. Salinsky, Roland W. Selman and David S. Winton for Defendant and Appellant.

Daniel J. Gonzalez and S. Thomas Todd as Amici Curiae on behalf of Defendant and Appellant.

OPINION

COTTLE, J.—

## INTRODUCTION

Defendant Beverly California Corporation (hereafter Beverly), operator of a licensed skilled nursing facility, appeals from a judgment entered upon a jury verdict in this medical malpractice wrongful death action. Beverly contends the trial court committed prejudicial error in excluding evidence pertaining to the allocation of negligence between Beverly and the decedent's treating physician, and in prohibiting Beverly's key expert witness from responding to plaintiffs' expert's testimony. Beverly also contends that the noneconomic damage award must be reversed because the trial court refused to give complete instructions and because the award is excessive as a matter of law. Finally, Beverly contends the court erred in permitting plaintiffs to recover their expert witness costs and prejudgment interest.

Plaintiffs cross-appeal, based on the trial court's manner of calculating the judgment. The court first reduced the jury's verdict for noneconomic damages to $250,000 pursuant to the Medical Injury Compensation Reform Act (MICRA), and then reduced it further, pursuant to Proposition 51, to reflect the percentage of fault attributed to the decedent's treating physician. Plaintiffs contend the court should have applied Proposition 51 *before* reducing the noneconomic damages to the MICRA cap of $250,000.

We shall affirm both the judgment and the manner in which it was calculated. We shall reverse, however, the order granting plaintiffs their expert witness fees and prejudgment interest.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

D. *Award of Costs and Prejudgment Interest*

On April 21, 1988, plaintiffs made a joint offer to compromise, for $250,000, pursuant to Code of Civil Procedure section 998. The offer was rejected. On February 3, 1989, plaintiffs made a second joint offer to compromise, this time for $150,000. The second offer was also rejected. At trial, plaintiffs collectively obtained a more favorable judgment than the second offer.[4] The trial court awarded plaintiffs their expert witness costs under Code of Civil Procedure section 998[5] and prejudgment interest from the date of the second offer under Civil Code section 3291.[6]

■ Beverly contends that plaintiffs' joint offer to compromise was invalid because it did not permit Beverly to determine whether each individual plaintiff in fact obtained a more favorable judgment than her offer. We agree.

In *Hurlbut* v. *Sonora Community Hospital* (1989) 207 Cal.App.3d 388 [254 Cal.Rptr. 840], the court held that a joint offer to compromise, tendered by three plaintiffs, precluded the court from being able to determine "whether *each* plaintiff received a judgment more favorable than the offer." (*Id.*, at p. 409, italics in original.) The court relied on a case, *Randles* v. *Lowry* (1970) 4 Cal.App.3d 68, 74 [84 Cal.Rptr. 321], in which a defendant made a single offer of $2,330 to three plaintiffs (a husband, wife, and child). The *Randles* court held that without a designation as to how the amount should be divided among the three plaintiffs, it was impossible to say that any one plaintiff received a less favorable judgment than he or she would have received under the offer.

---

*See footnote, *ante*, page 121.

[4]The total judgment was for $228,379.79, consisting of $225,000 in general damages and $3,379.79 in special damages.

[5]Code of Civil Procedure section 998 allows a prevailing party to recover expert witness fees: "(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs."

[6]Civil Code section 3291 provides, in pertinent part: "If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

In *Hurlbut*, the court found this reasoning persuasive in the case of a joint offer by numerous plaintiffs to a single defendant. The court stated: "To consider plaintiffs' joint settlement offer as valid would deprive defendant of the opportunity to evaluate the likelihood of each party receiving a more favorable verdict at trial. Such an offer makes it impossible to make such a determination after verdict. We hold that the joint settlement offer presented by plaintiffs was not a valid settlement offer under Code of Civil Procedure section 998 and the order after judgment directing defendant to pay to plaintiffs certain expert witness fees must be reversed." (207 Cal.App.3d at p. 410.)

Finally, the *Hurlbut* court distinguished those cases "sanctioning a plaintiff's joint offer to multiple defendants where they are held to be jointly and severally liable" because in those cases "plaintiffs' interests were not identical. There was no single, indivisible injury to evaluate for settlement purposes." (*Hurlbut* v. *Sonora Community Hospital, supra,* 207 Cal.App.3d at p. 410.)

Plaintiffs respond that in this wrongful death action, they did suffer a single, indivisible injury because " 'the cause of action for wrongful death has been consistently characterized as "a joint one, a single one and an indivisible one" . . .' (*Canavin* v. *Pacific Southwest Airlines* [(1983)] 148 Cal.App.3d [512,] 529 . . . ; *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 694 [parallel citations]) . . . ." (*Yates* v. *Pollock* [(1987)] 194 Cal.App.3d 195, 200-201 [239 Cal.Rptr. 383].)

*Yates,* however, did not deal with the situation of whether wrongful death plaintiffs have a single, indivisible interest for purposes of making a settlement offer under Code of Civil Procedure section 998. Indeed, the two cases the *Yates* court cites state unequivocally that the wrongful death statute, Code of Civil Procedure section 377, is a procedural statute that does not create a joint cause of action but rather merely requires joinder of the causes. (*Canavin* v. *Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 530 [196 Cal.Rptr. 82]; *Cross* v. *Pacific Gas & Elec. Co* (1964) 60 Cal.2d 690, 692 [36 Cal.Rptr. 321, 388 P.2d 353].) In *Cross,* the Supreme Court explained: "In stating that an action for wrongful death is joint, it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is single, it is meant that only one action for wrongful death may be brought whether, in fact it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible, it is meant that there cannot be a series of suits by heirs against the tortfeasor for their individual damages. [Citation.]" (60 Cal.2d at p. 694.)

The *Cross* court went on to explain that "[a]lthough recovery under section 377 is in the form of a 'lump sum,' the amount is determined in accordance with the various heirs' separate interests in the deceased's life and the loss suffered by each by reason of the death, . . ." and therefore "each heir should be regarded as having a personal and separate cause of action." (60 Cal.2d at p. 692.) "[T]he interests of the heirs are separate rather than joint." (*Id.* at p. 693.)

In the instant case, the joint offer to compromise did not afford Beverly the opportunity to evaluate the separate and distinct loss suffered by each plaintiff as a result of the death of Stephanie Hennes. Without an apportionment of the damages among the four plaintiffs, it is impossible to say that any one of them received a judgment more favorable than she would have received under the offer. (*Hurlbut* v. *Sonora Community Hospital, supra,* 207 Cal.App.3d at p. 410.) Accordingly, the award of costs for expert witness fees must be reversed. In addition, because an award of prejudgment interest under Civil Code section 3291 depends upon plaintiffs receiving a more favorable judgment pursuant to Code of Civil Procedure section 998, it follows that the trial court also erred in its award of prejudgment interest.

CROSS-APPEAL

■ The cross-appeal raises a single issue: whether in a medical malpractice action noneconomic damages should be reduced pursuant to Civil Code section 3333.2 (the MICRA cap) before or after noneconomic damages are reduced pursuant to Civil Code section 1431.1 et seq. (Prop. 51) to reflect a defendant's several, rather than joint, liability. The trial court first applied the MICRA cap, reducing the jury's $400,000 award for noneconomic damages to $250,000, and then applied Proposition 51, reducing it an additional 10 percent based on the percentage of negligence attributed to Dr. Schulkin. Plaintiffs contend this was error. They claim that the court should have factored in Dr. Schulkin's negligence before reducing the award to the MICRA cap. They contend that the recent opinions in *McAdory* v. *Rogers* (1989) 215 Cal.App.3d 1273 [264 Cal.Rptr. 71] and *Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380 [273 Cal.Rptr. 231] compel this result. We disagree.

Neither *McAdory* nor *Atkins* dealt with the interplay between Proposition 51 and the MICRA cap. Rather, they dealt with the interrelationship between comparative negligence principles and MICRA. In *McAdory*, the court held the jury's verdict should be reduced to reflect the plaintiff's comparative fault *before* noneconomic damages were reduced to $250,000. The court reasoned that because of the MICRA cap, the plaintiff was "already recovering an amount less than the jury determined he or she was damaged by the

tortious conduct of others . . . . No purpose would be served by further reducing that plaintiff's award." (*McAdory* v. *Rogers, supra,* 215 Cal.App.3d at p. 1279.) *Atkins* followed *McAdory,* holding that the trial court properly applied the jury's comparative fault finding before reducing the noneconomic damages under Civil Code section 3333.2.

Proposition 51, on the other hand, implicates very different considerations from those implicated in the *McAdory* and *Atkins* cases. Prior to the adoption of Proposition 51, multiple tortfeasors were ordinarily jointly and severally liable for *all* damages caused to an injured plaintiff where their acts contributed to the injury. This resulted in "some situations in which defendants who bore only a small share of fault for an accident could be left with the obligation to pay all or a large share of plaintiff's damages if other more culpable tortfeasors were insolvent." (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1198 [246 Cal.Rptr. 629, 753 P.2d 585].)

To address this situation, Proposition 51 was passed.[7] "[R]ecognizing the potential inequity in a rule which would require an injured plaintiff who may have sustained considerable medical expenses and other damages as a result of an accident to bear the full brunt of the loss if one of a number of tortfeasors would prove insolvent, the drafters of the initiative" retained joint and several liability for *economic* damages but made liability for *noneconomic* damages several. (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1198.) Under Proposition 51, "each defendant is liable for only that portion of the plaintiff's noneconomic damages which is commensurate with that defendant's degree of fault for the injury." (*Ibid.*)[8] In other words, a

---

[7]Civil Code section 1431.1 provides: "The People of the State of California find and declare as follows: [¶] a) The legal doctrine of joint and several liability, also known as 'the deep pocket rule', has resulted in a system of inequity and injustice that has threatened financial bankruptcy of local governments, other public agencies, private individuals and businesses and has resulted in higher prices for goods and services to the public and in higher taxes to the taxpayers. [¶] b) Some governmental and private defendants are perceived to have substantial financial resources or insurance coverage and have thus been included in lawsuits even though there was little or no basis for finding them at fault. Under joint and several liability, if they are found to share even a fraction of the fault, they often are held financially liable for all the damage. The People—taxpayers and consumers alike—ultimately pay for these lawsuits in the form of higher taxes, higher prices and higher insurance premiums. [¶] c) Local governments have been forced to curtail some essential police, fire and other protections because of the soaring costs of lawsuits and insurance premiums. [¶] Therefore, the People of the State of California declare that to remedy these inequities, defendants in tort actions shall be held financially liable in closer proportion to their degree of fault. To treat them differently is unfair and inequitable. [¶] The People of the State of California further declare that reforms in the liability laws in tort actions are necessary and proper to avoid catastrophic economic consequences for state and local governmental bodies as well as private individuals and businesses."

[8]Civil Code section 1431.2, subdivision (a) provides: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability

defendant is not liable for that portion of noneconomic damages attributable to a joint or concurrent tortfeasor, even if the other tortfeasor is insolvent, or is not named as a defendant, or is immune,[9] or, for some other reason is beyond the jurisdiction of the court.

We now turn to the question of how Proposition 51 interrelates with MICRA. Plaintiffs contend that in cases implicating both statutory schemes, the court should first deduct from the jury's verdict the percentage of fault attributable to the other joint or concurrent tortfeasors and then, if the result is still in excess of $250,000, reduce it to the MICRA cap. At first blush, this approach appears reasonable. However, upon further analysis, it is clear that apportioning damages in this manner would effectively defeat the stated purposes of Proposition 51—to limit the potential liability of an individual defendant for noneconomic damages to a proportion commensurate with that defendant's personal share of fault.

A few hypothetical situations illustrate this point. For example, if in the instant case Dr. Schulkin were a named defendant and if he were solvent, how would damages be apportioned? Amici curiae suggest that the MICRA cap should first be applied, reducing the $400,000 noneconomic damage award to $250,000. Dr. Schulkin would be liable for 10 percent of the damages, representing his share of the fault, or $25,000; Beverly, on the other hand, would be liable for 90 percent of the damages, or $225,000. Plaintiffs argue that under this hypothetical, they "could have sought recovery against Dr. Schulkin for up to $40,000." However, if they obtained $40,000 from Dr. Schulkin they could only recover $210,000 from Beverly. Under MICRA, where more than one health care provider jointly contributes to a single injury, the maximum a plaintiff may recover for noneconomic damages is $250,000. (*Yates* v. *Pollock, supra,* 194 Cal.App.3d 195, 200-201.)

If we change the hypothetical to assume that Dr. Schulkin is insolvent, plaintiffs argue "it would do violence to neither Proposition 51 nor the $250,000 cap for the plaintiff to collect the full $250,000 of noneconomic damages from Beverly." However, it would do violence to Proposition 51 to condition a defendant's liability for noneconomic damages upon whether other tortfeasors are solvent or not. It was precisely this inequity that Proposition 51 was intended to remedy. To apply plaintiffs' analysis would result in Beverly owing an additional $40,000 simply because a concurrent

of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

[9]Civil Code section 1431.3 provides: "Nothing contained in this measure is intended, in any way, to alter the law of immunity."

tortfeasor, whose act of medical malpractice contributed to the plaintiffs' injury, was insolvent or not named in the lawsuit.

Amici curiae put forward another hypothetical: a jury awards $1 million for noneconomic damages and finds each of three health care providers responsible for 33⅓ percent of the damages. If MICRA were applied first, as amici urge, each defendant would owe one-third of $250,000, or $83,333.33. Plaintiffs, on the other hand, suggest "each of the defendants would be severally liable for one-third of the *total noneconomic damages* as assessed by the jury [i.e., liable for one-third of $1 million, or $333,333.33]. If, for example, two of the defendants were insolvent, the plaintiff should be able to collect $250,000 in noneconomic damages from the solvent defendant." (Italics added.) We disagree. A defendant's liability under Proposition 51 is not based on whether other tortfeasors pay their proportional share; it is based on the particular defendant's share of fault.

Modifying the latter hypothetical, what if only one of the tortfeasors were insolvent or not named in the lawsuit? Would plaintiffs have the two solvent tortfeasors divide the $250,000 between them or would they insist that each tortfeasor was liable for $250,000? If each were liable for the full amount, the first to pay would effectively excuse the other from making any payment. As noted earlier, a plaintiff cannot recover more than $250,000 in noneconomic damages from all health care providers for one injury. (*Yates* v. *Pollock, supra,* 194 Cal.App.3d 195, 200-201.) Depending upon the solvency of other tortfeasors, a culpable solvent defendant could be liable for as little as $0, or as much as $83,333.33, $125,000 or $250,000, all depending on when the MICRA cap is applied and whether other tortfeasor(s) have paid or can pay their fair share of the noneconomic damages. Proposition 51 was enacted to avoid this result and to bring some certainty into this area.[10]

In summary, we conclude that the trial court correctly reduced the jury's verdict to the MICRA cap before factoring in Dr. Schulkin's negligence. By calculating damages in this manner, defendant Beverly's liability reflected

---

[10]Yet another hypothetical will illustrate the interplay between MICRA, Proposition 51, and comparative negligence principles as implicated in *McAdory* v. *Rogers, supra,* 215 Cal.App.3d 1273. If a jury awards plaintiff $1 million dollars in noneconomic damages and apportions fault as follows—25 percent to plaintiff; 25 percent to a drug company (not a health care provider under MICRA); 40 percent to Dr. A; and 10 percent to Dr. B—, then the judgment would be calculated as follows: First, plaintiff's negligence will reduce the $1 million verdict to $750,000 (*ibid.*); the drug company will be severally liable for 25 percent of the verdict, or $250,000; the health care providers' total liability will be $250,000 pursuant to MICRA; this amount will be apportioned 80 percent to Dr. A and 20 percent to Dr. B according to their respective percentage of fault. If any of the concurrent tortfeasors is insolvent, the liability of the other tortfeasors remains unchanged.

only its proportional share of fault (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1198) and did not take into account whether other tortfeasors paid their proportional share. This is clearly the import of Proposition 51.

## DISPOSITION

We reverse the order awarding plaintiffs their expert witness fees and prejudgment interest. In all other respects, the judgment is affirmed. Each side shall bear its own costs on appeal.

Premo, Acting P. J., and Elia, J., concurred.