[Nos. A102260, A103738. First Dist., Div. Three. Mar. 30, 2005.]

NICHOLAS FRANCIES, Plaintiff and Appellant, v.
WILLIAM KAPLA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

**COUNSEL**

Dell'Ario & LeBoeuf, A. Charles Dell'Ario, Jacques LeBoeuf; Bennett, Johnson & Geller, Richard C. Bennett and Todd A. Walburg for Plaintiff and Appellant.

Allen Matkins Leck Gamble & Mallory, Robert R. Moore, Michael J. Betz and Gary A. Sloboda for Defendant and Appellant.

## OPINION

**POLLAK, J.**—Defendant Dr. William Kapla appeals from the judgment entered in favor of his former patient, plaintiff Nicholas Francies, on his complaint for medical malpractice, invasion of privacy, and violation of the Confidentiality of Medical Information Act, Civil Code section 56 et seq. (CMIA), based on the allegation that without Francies's consent, Kapla disclosed Francies's HIV status to Francies's employer. Kapla contends the trial court erred by, among other things, permitting Francies to proceed on theories other than professional negligence; rejecting Kapla's claims of judicial estoppel and litigation privilege; and entering judgment in Francies's favor contrary to the weight of the evidence. Francies has filed a cross-appeal challenging the trial court's calculation of damages.

In the unpublished portion of this opinion, we reject Kapla's asserted errors with regard to the causes of action for medical malpractice and violation of the CMIA, but conclude the judgment is unsupported with regard to the cause of action for invasion of privacy. In the published portion of the opinion, we conclude the trial court erred in the manner in which it applied Code of Civil Procedure section 877, Civil Code section 1431.1 (Proposition 51), and Civil Code section 3333.2 (the Medical Injury Compensation Reform Act, or MICRA) to the calculation of recoverable damages.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 1997, Francies filed a complaint against Kapla alleging that Kapla had disclosed his HIV status to his employer without his consent, resulting in Francies's termination from his employment and causing him to suffer severe physical, mental and emotional distress. The complaint, as amended in January 1999, asserts liability under causes of action for medical malpractice, for constitutional, intentional and negligent invasion of privacy and for a violation of the CMIA. Both parties waived their right to a jury trial and the case was tried to the court. The following evidence was presented at trial.

Francies was diagnosed as HIV positive shortly after Kapla became his primary care physician in 1993. In 1995, Francies began working as the general manager of the Savoy Brasserie restaurant in San Francisco. By the summer of 1996, Francies was having difficulties at work with his supervisor and with other employees. His supervisor was intruding into his personal life. He had been accused of harassment by two employees and of drug and alcohol use at work by another employee. He was having trouble completing a budget projection that was due on October 31, 1996. As a result of the pressure in his personal and professional life, Francies became so anxious that he developed insomnia and a rash.

On October 31, rather than reporting to work to submit the budget projection, he went to see Kapla. He told Kapla that he was too anxious to work, and Kapla agreed. Kapla requested that his assistant, Janet Blair, fax a note to the restaurant certifying that Francies was temporarily disabled and would be out of work for one month. Francies completed the workers' compensation forms necessary to obtain benefits for the month and Kapla filled out the required form entitled "Doctor's First Report of Occupational Injury or Illness" (first report or report). Kapla checked a box indicating Francies was suffering from an additional condition that might impede or delay his recovery, and added the notation that "[patient] is managing HIV disease." Francies was unaware that his HIV status was included in the report.

On November 11, Blair faxed a number of workers' compensation forms, including the first report, to the restaurant. The parties offered different explanations as to why Blair faxed the report to Francies's employer, rather than to its insurer as she should have done. Blair testified that although she did not remember Francies asking her to fax the report to his employer, he must have done so because in the ordinary course of business she would not have done so unless asked. Francies expressly denied asking her to fax the report to his employer. Kapla testified that although he continued to treat Francies for two months after the disclosure and knew that Francies was upset that his employer had learned of his HIV status, Kapla did not know that the report had been faxed to the restaurant until after Francies filed this lawsuit.

The day after the restaurant received the report, Francies's supervisor and the restaurant owner agreed that Francies's HIV disease could pose a "PR nightmare" and that Francies would have to be discharged. On December 19, Francies was notified by mail that he had been replaced as general manager and would thereafter be considered an "employee on unpaid leave without benefits."

Francies filed a wrongful termination action against the restaurant, which he eventually settled for $160,000. He also recovered $43,035 in workers' compensation benefits. .

After a bench trial in the present action, the court issued a statement of decision finding in favor of Francies on his causes of action for medical malpractice, constitutional invasion of privacy and violation of the CMIA.[1]

---

[1] The trial court found against Francies on his causes of action for intentional and negligent invasion of privacy. The court questioned whether a cause of action for negligent invasion of privacy existed, but ultimately rejected both claims on the ground that there was no public disclosure of the private information.

The trial court rejected Kapla's defenses of judicial estoppel and litigation privilege. It found that Francies had not consented to the disclosure of his HIV status to his employer and that the disclosure constituted medical malpractice, an invasion of privacy and the unlawful disclosure of medical information. The court found that Francies had suffered $70,000 in economic damages and $425,000 in noneconomic damages. After reducing the damages to reflect an allocation of fault, prior recoveries, and the limitation imposed by MICRA, in a manner explained more fully below, recoverable damages were reduced to $191,998.96. Francies was also awarded $1,000 in attorney fees under the CMIA.[2] Following the entry of judgment both Francies and Kapla filed timely notices of appeal and cross-appeal.[3]

DISCUSSION

I. *Liability Issues.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Issues Regarding Recoverable Damages.*

Francies appeals from the trial court's award of $25,332 in economic damages and $166,667 in noneconomic damages. The award was calculated as follows. The trial court initially determined that Francies had suffered $70,000 in economic damages and $425,000 in noneconomic damages. These findings are not disputed. The economic damages were reduced by 22 percent of $203,035, or $44,668, to reflect the portion of the recoveries from Francies's employer in the wrongful termination action ($160,000) and from the workers' compensation proceedings ($43,035) attributable to economic damages. Twenty-two percent was derived as the ratio of the $70,000 economic damages to the total award after reducing noneconomic damages to the $250,000 cap imposed by MICRA ($70,000 / $70,000 + $250,000 = 22%). The noneconomic damages were reduced to $250,000 under MICRA

---

[2] Civil Code section 56.35 provides for damages under the CMIA as follows, "In addition to any other remedies available at law, a patient whose medical information has been used or disclosed in violation of Section 56.10 or 56.104 or 56.20 or subdivision (a) of Section 56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorneys' fees not to exceed one thousand dollars ($1,000), and the costs of litigation."

[3] Kapla filed two notices of appeal: the first from the judgment and the second from the trial court's postjudgment order settling his objections to Francies's cost bill. Kapla's appeals have been consolidated for all purposes.

*See footnote, *ante,* page 1381.

and again reduced by $83,333 to reflect the trial court's allocation of one-third of responsibility for Francies's damages to Francies's employer. Francies challenges the reduction of both the economic and noneconomic damages.

Francies's initial argument regarding the inapplicability of the MICRA cap to the cause of action for invasion of privacy is moot, as we have concluded that the judgment on that cause of action must be reversed.[11] Kapla points out correctly that Francies did not raise his other arguments concerning the calculation of recoverable damages in the trial court. Francies acknowledges this failure but nonetheless requests this court to review the asserted errors because the new arguments involve pure questions of law that turn on undisputed facts. We agree that Francies's additional contentions assert purely legal errors that are readily correctable on appeal, and the issues have been addressed on their merits in the briefs of both parties. Accordingly, we exercise our discretion to consider these arguments despite the failure to have raised them below. (*People v. Smith* (2001) 24 Cal.4th 849, 852–853 [102 Cal.Rptr.2d 731, 14 P.3d 942].)

Francies asserts the trial court erred in the calculation of recoverable economic damages. Pursuant to Code of Civil Procedure section 877, the trial court deducted 22 percent of the $203,035 Francies recovered in the prior proceedings from the award of economic damages.[12] The court calculated the percentage based on what it found to be the ratio between Francies's economic damages and the total award. (*Greathouse v. Amcord, Inc.* (1995) 35 Cal.App.4th 831, 841 [41 Cal.Rptr.2d 561]; *Espinoza v. Machonga* (1992) 9 Cal.App.4th 268 [11 Cal.Rptr.2d 498].) However, in determining this ratio, the court first reduced the amount of noneconomic damages from $425,000 to the $250,000 maximum recovery permitted by MICRA. Francies contends the trial court should have calculated the ratio before, rather than after, applying the MICRA cap to the noneconomic damages. We agree.

---

[11] Francies, for good reason, does not suggest that the MICRA cap is inapplicable to his recovery under the CMIA. The CMIA prohibits a health care provider from disclosing medical information regarding a patient without prior authorization. (Civ. Code, § 56.10.) Because Kapla's violation of CMIA is based on Kapla's professional negligence, the MICRA cap on noneconomic damages applies to Francies's recovery under this cause of action. However, since the damages awarded by the trial court applied to both the negligence and CMIA causes of action, the recovery under the CMIA does not affect the calculation of recoverable damages. The $1,000 in attorney fees awarded under the CMIA does not apply against the MICRA cap on noneconomic damages.

[12] Code of Civil Procedure section 877 provides that a release given in good faith before verdict or judgment "to one or more of a number of tortfeasors claimed to be liable for the same tort . . . [¶] (a) . . . shall reduce the claims against the others in the amount stipulated by the release . . . or in the amount of the consideration paid for it whichever is the greater."

The objective of this calculation is to determine the proper allocation between economic and noneconomic damages of the amounts previously recovered. (*Greathouse v. Amcord, Inc., supra*, 35 Cal.App.4th at p. 841; *Espinoza v. Machonga, supra*, 9 Cal.App.4th at p. 277.) The MICRA cap had no effect on the amounts recovered either from Francies's employer or as workers' compensation benefits. In using the allocation of damages made by the trier of fact in the current proceedings as the appropriate allocation of the amounts previously recovered, the relevant ratio is the actual economic damages as a percentage of the total damages suffered by Francies, not the ratio between the economic damages and the amount of damages that Francies can recover from Kapla. (See *McAdory v. Rogers* (1989) 215 Cal.App.3d 1273, 1277–1278 [264 Cal.Rptr. 71] [MICRA cap was intended to limit the *recovery* of noneconomic damages rather than limit the damages the plaintiff actually suffers]; *Atkins v. Strayhorn* (1990) 223 Cal.App.3d 1380, 1393 [273 Cal.Rptr. 231] [same]; see *Salgado v. County of Los Angeles* (1998) 19 Cal.4th 629, 641 [80 Cal.Rptr.2d 46, 967 P.2d 585].) Accordingly, the prior recoveries should have been allocated based on the ratio between the economic and noneconomic components of Francies's total damages before taking into account any limitation on recovery imposed by MICRA. The proportion of the prior recoveries allocable to economic damages therefore is the ratio between $70,000 and Francies's total damages of $495,000 ($70,000 + $425,000), approximately 14 percent. The trial court should have subtracted only $28,425 (14% of $203,035) from the $70,000 economic damages to offset for the prior recovery of economic damages. The award of economic damages therefore should be increased to $41,575.

With respect to the noneconomic damages, the trial court determined that Kapla was two-thirds responsible for Francies's injury and that Francies's employer was one-third responsible. Accordingly, the trial court applied Proposition 51 to award Francies only two-thirds of the $250,000 in noneconomic damages recoverable under MICRA. Francies contends the trial court again erred in applying the MICRA cap before reducing the noneconomic damages to account for the share of responsibility attributable to Francies's employer. We have found no published authority that is precisely on point, but the reasoning of several cases addressing the integration of these various damage limitations demonstrates the merit of Francies's position.

In *McAdory v. Rogers, supra*, 215 Cal.App.3d 1273, the court held that the amount of the plaintiff's recoverable damages should be reduced to reflect the plaintiff's comparative fault before application of the MICRA cap. If the defendant is responsible for more than $250,000 of noneconomic damages, the cap applies, but there is no justification for reducing the

recovery below the $250,000 limit. The court reasoned that subtracting the amount of damages attributable to the plaintiff's comparative fault before application of the MICRA cap was consistent with "the primary goal of the comparative fault system [which] is to '[maximize . . .] recovery to the injured party for the amount of his injury to the extent fault of others has contributed to it.' " (*Id.* at p. 1279.) Since the plaintiff's total noneconomic damages in that case were $370,000 and the plaintiff was found to have been 22 percent at fault, "[t]here is no legitimate or logical reason for reducing that award to the $250,000 cap prescribed by section 3333.2 *before* reducing it further due to [plaintiff's] 22 percent comparative fault." (*McAdory v. Rogers, supra,* at p. 1281.) In *Atkins v. Strayhorn, supra,* 223 Cal.App.3d at pages 1391–1393, the court came to the same conclusion based upon the same reasoning.[13] And similar reasoning was adopted in *Salgado v. County of Los Angeles, supra,* 19 Cal.4th at pages 640–641, in holding that damages should be reduced to present value before rather than after applying the MICRA cap on noneconomic damages.

The same analysis applies here. The only difference between the situation in the present case and that in *McAdory* and *Atkins* is that Kapla's share of the fault must be reduced to reflect the responsibility of a third party rather than of the plaintiff himself. The MICRA cap limits the amount of noneconomic damages for which Kapla may be held responsible to $250,000, but if he is responsible for noneconomic damages in that amount (or more), MICRA provides no justification for reducing the damages for which he may be held liable below that amount because a third party to whom MICRA does not apply was also partially at fault.

Kapla argues that a contrary conclusion is required by *Gilman v. Beverly California Corp.* (1991) 231 Cal.App.3d 121, 126–130 [283 Cal.Rptr. 17] (*Gilman*), a case decided after the adoption of Proposition 51. There, the plaintiff incurred noneconomic damages in excess of $250,000 as the result of the negligence of two health care providers. The court rejected the argument that "in cases implicating both statutory schemes [MICRA and Proposition 51], the court should first deduct from the jury's verdict the percentage of fault attributable to the other joint or concurrent tortfeasors and then, if the result is still in excess of $250,000, reduce it to the MICRA cap." (*Gilman,*

---

[13] Both *McAdory v. Rogers, supra,* 215 Cal.App.3d at page 1277, and *Atkins v. Strayhorn, supra,* 223 Cal.App.3d at page 1393, footnote 6, rejected *Semsch v. Henry Mayo Newhall Memorial Hospital* (1985) 171 Cal.App.3d 162 [216 Cal.Rptr. 913] as convincing authority to the contrary. Kapla cites *Semsch* as authority for his position but we agree with the other courts that this issue was not fully considered in the footnote in *Semsch* on which Kapla relies and that that case is not persuasive on this issue.

*supra*, at p. 128.) The court reasoned that because a plaintiff cannot recover more than $250,000 in noneconomic damages from all health care providers for one injury,[14] that amount should be apportioned based on the relative fault of the health care providers. *Gilman* thus turns on the fact that the third party who shared responsibility for the plaintiff's injury was also a health care provider, making it necessary, in effect, to apportion the $250,000 MICRA limit. In the present case, however, Kapla is the only responsible party subject to the MICRA cap and MICRA provides no reason to reduce his liability for noneconomic damages below that cap.

This distinction is made unmistakably clear by a hypothetical discussed in footnote 10 of the *Gilman* opinion: "Yet another hypothetical will illustrate the interplay between MICRA, Proposition 51, and comparative negligence principles as implicated in *McAdory v. Rogers, supra*, 215 Cal.App.3d 1273. If a jury awards plaintiff $1 million . . . in noneconomic damages and apportions fault as follows—25 percent to plaintiff; 25 percent to a drug company (not a health care provider under MICRA); 40 percent to Dr. A; and 10 percent to Dr. B—then the judgment would be calculated as follows: First, plaintiff's negligence will reduce the $1 million verdict to $750,000 (*ibid.*); the drug company will be severally liable for 25 percent of the verdict, or $250,000; the health care providers' total liability will be $250,000 pursuant to MICRA; this amount will be apportioned 80 percent to Dr. A and 20 percent to Dr. B according to their respective percentage of fault. If any of the concurrent tortfeasors is insolvent, the liability of the other tortfeasors remains unchanged." (*Gilman, supra*, 231 Cal.App.3d at p. 129, fn. 10.) The hypothetical reflects there is no basis to reduce Kapla's liability because of the fault of another party who is not a health care provider, and that since he is the only responsible party to whom MICRA applies, he may be liable for up to $250,000 in noneconomic damages.

In the present case, Kapla was found responsible for two-thirds of Francies's noneconomic damages of $425,000, or some $283,000. Since this amount exceeds the MICRA limit of $250,000, his liability for these damages should have been capped at $250,000. There was no basis, however, to further reduce his liability for noneconomic damages.

---

[14] The court's reasoning was based squarely on the premise that "[u]nder MICRA, where more than one health care provider jointly contributes to a single injury, the maximum a plaintiff may recover for noneconomic damages is $250,000," citing *Yates v. Pollock* (1987) 194 Cal.App.3d 195, 200–201 [239 Cal.Rptr. 383]. (*Gilman, supra*, 231 Cal.App.3d at p. 128.) Francies questions whether this proposition is in fact supported by *Yates v. Pollock*, but he cites no authority supporting the view that a separate $250,000 limit applies to each health care provider who contributes to a single injury. It is unnecessary to address that question here.

### DISPOSITION

The judgment in favor of Francies on the cause of action for invasion of privacy is reversed. The economic damages on the remaining causes of action should be increased to $41,575 and the noneconomic damages should be increased to $250,000. Hence, the judgment shall be modified to award Francies total damages of $291,575. The judgment is affirmed in all other respects. Francies shall recover his costs on appeal.

Corrigan, Acting P. J., and Parrilli, J., concurred.

On April 8, 2005, the opinion was modified to read as printed above.